**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Darlene PHILLIPS, Defendant and Appellant.**

**No. 17621.**

Supreme Court of South Dakota.

Considered on Briefs May 26, 1992.

Decided Aug. 12, 1992.

Mark Barnett, Atty. Gen., Robert Mayer and Mark Smith, Asst. Attys. Gen., Pierre, for plaintiff and appellee.

Bruce A. Hubbard of Hansen & Hubbard, Sturgis, for defendant and appellant.

MILLER, Chief Justice.

Darlene Phillips appeals her conviction of conspiracy to commit murder in the first degree. We affirm.

## FACTS

Phillips, her husband Jerome Phillips (Jerome), her twin sister Delores Christenson, and Delores' daughter (Robin) all moved into Walter Gibbs' home in Lemmon, South Dakota, in February, 1989. At that time, Gibbs, age 84, was living in a nursing home in Lemmon. Sometime shortly thereafter, Gibbs returned to his home, where Phillips and Christenson were going to care for him. Prior to 1989, both Phillips and Christenson had twice been married to and divorced from Gibbs.

As of April, 1989, Gibbs' will left all of his property to his cousin, Bernice Beoettner, except for his home in Lemmon, which he left to Christenson. On January 5, 1990, Gibbs changed his will, making Christenson his sole beneficiary. On January 8, 1990, while driving to Jerome's brother's funeral in Redfield, South Dakota, Phillips and Jerome first discussed killing Gibbs in order to "activate the will." Phillips suggested manipulating Gibbs' medications.

In late February, 1990, Phillips, Jerome, and Christenson further discussed killing Gibbs. They developed a plan to kill him over the next several weeks. The original plan involved manipulating his medications; however, it was later suggested they smother him with a pillow. Gibbs died April 1, 1990, from what was originally thought to be natural causes.

Sometime after Gibbs' death, Phillips was sentenced to the Springfield Correctional Facility in Springfield, South Dakota, on an arson conviction.[1] While she was incarcerated, Phillips confided to Gayle Baskin, who was also an inmate at the prison, that Gibbs had not died of natural causes but, in fact, had been murdered. Phillips told Baskin that she had been involved in the murder.

Through various third parties, Baskin contacted Robert Overturf, Special Agent for the Division of Criminal Investigation (DCI). Baskin told Agent Overturf that she had information concerning a crime that had been committed. Agent Overturf and Special Agent Jim Vlahakis met with Baskin at the Springfield Correctional Facility. After speaking with Baskin, Agents Overturf and Vlahakis met with Phillips. At Phillips' insistence, Baskin was present for the interview. During this interview, Phillips gave a statement which indicated that Gibbs did not die of natural causes and that she had been part of a plan to kill him.

On December 27, 1990, Phillips, Jerome, and Christenson were indicted on charges of aiding and abetting both first- and second-degree murder and conspiracy to commit both first- and second-degree murder. Thereafter, Jerome pled guilty to conspiracy to commit second-degree murder. A joint trial was held for Phillips and Christenson. Jerome testified for the State. Neither Phillips nor Christenson testified. According to the testimony, Phillips held Gibbs' hands down while a pillow was held over his face by Jerome, thereby smothering Gibbs. Phillips was convicted on the charge of conspiracy to commit murder in

---

1. Phillips set fire to Gibbs' house in August, 1989, while he was inside sleeping. *See State v.*

*Phillips,* 474 N.W.2d 905 (S.D.1991).

the first degree. Christenson was acquitted on all counts.

On appeal, Phillips raises the following issues: (1) whether the trial court improperly denied Phillips' suppression motion; (2) whether the trial court erred in denying Phillips' motion to dismiss the charges associated with first-degree murder; and (3) whether the trial court erred in allowing testimony from certain witnesses.

## DECISION

### I.

### WHETHER THE TRIAL COURT ERRED IN DENYING PHILLIPS' MOTION TO SUPPRESS.

■■■ Phillips argues that the trial court erred in finding that Phillips had re-initiated contact with law enforcement officers and that she had voluntarily, knowingly, and intelligently waived her *Miranda* rights. This court will uphold the trial court's findings unless they are clearly erroneous. *State v. Blue Thunder,* 466 N.W.2d 613, 616 (S.D.1991); *State v. Braddock,* 452 N.W.2d 785, 788 (S.D.1990); *State v. Jenner,* 451 N.W.2d 710, 716 (S.D. 1990); *State v. Gregg,* 405 N.W.2d 49, 52 (S.D.1987); *State v. Woods,* 374 N.W.2d 92, 98 (S.D.1985).

Through a series of events, two DCI Agents (Overturf and Vlahakis) arrived at the Springfield Correctional Facility to interview Phillips about Gibbs' death. The agents were not armed and they were dressed in coats and ties. Phillips knew that investigators were coming to Springfield to interview her. At the beginning of the interview, Phillips requested that Baskin be present. They stopped the interview and sent for Baskin.

Once Baskin arrived, a tape recorder was turned on and Agent Overturf read Phillips her *Miranda* rights. She waived those rights. However, she was asked again whether she wanted an attorney. She responded by asking if an attorney was present, to which Agent Overturf said "no." Phillips then asked how soon he could get her an attorney. He replied that he could not get her one right away and that if she wanted an attorney, the interview had to end.

At that time, Agent Overturf ended the interview and left the room to call the Attorney General's Office.[2] Agent Vlahakis remained in the room with Phillips and Baskin. When Agent Overturf returned to the room, Phillips indicated that she wanted to make a statement. Agent Overturf turned the tape recorder back on and re-Mirandized Phillips. At this time, she stated that she had reapproached the agents and that she would give them her statement without an attorney present. She stated she had not been forced or coerced into making this statement.

■■■ The South Dakota Constitution, art. VI, § 9, provides in part: "No person shall be compelled in any criminal case to give evidence against himself...." The United States Supreme Court has said:

> To protect the privilege of self-incrimination guaranteed by the Fifth Amendment, we have held that the police must terminate interrogation of an accused in custody if the accused requests the assistance of counsel.

*Minnick v. Mississippi,* 498 U.S. 146, ——, 111 S.Ct. 486, 488, 112 L.Ed.2d 489, 494 (1990); *Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694, 723 (1966). *See also State v. Wiegers,* 373 N.W.2d 1 (S.D.1985). The *Miranda* protections were reinforced in *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378, 386 (1981): "[O]nce the accused requests counsel, officials may not reinitiate questioning 'until counsel has been made available' to him." *Minnick,* 498 U.S. at ——, 111 S.Ct. at 488, 112 L.Ed.2d at 494 (quoting *Edwards, supra* ). However, an accused "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or con-*

---

2. The DCI is a division of the Attorney General's     Office. SDCL 23-3-6.

versations with the police." *Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1885, 68 L.Ed.2d at 386 (emphasis added). *See also Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988); *Minnick, supra*. This rule is to ensure that the defendant is not coerced into making any statements in subsequent police interrogations. *Id.*

A defendant can waive his privilege against self-incrimination and the rights that go along with it, provided that the waiver is made voluntarily, knowingly, and intelligently. *Miranda, supra*. To determine whether the waiver was made voluntarily, knowingly, and intelligently, we must look to the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *State v. Hartley*, 326 N.W.2d 226 (S.D.1982); *State v. Cody*, 293 N.W.2d 440 (S.D.1980). We must also consider whether the defendant knew of the nature of the offense for which he was charged or suspected. *Cody, supra*. State has a heavy burden of demonstrating beyond a reasonable doubt that defendant voluntarily and knowingly waived his rights, and the courts must indulge in every reasonable presumption against waiver. *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Cody, supra*.

*State v. Holland*, 346 N.W.2d 302, 305 (S.D.1984). *See also Braddock*, 452 N.W.2d at 788; *Gregg*, 405 N.W.2d at 52; *State v. West*, 344 N.W.2d 502, 504 (S.D. 1984).

Based on this record, we cannot say the trial court was clearly erroneous in finding that Phillips was the one to re-initiate the interview and that Phillips voluntarily waived her right to an attorney.

## II.

WHETHER THE TRIAL COURT ERRED IN DENYING PHILLIPS' MOTION TO DISMISS THE CHARGES RELATED TO FIRST-DEGREE MURDER.

Phillips argues that the trial court erred in denying her motion to dismiss the charges relating to first-degree murder. This argument is based on Jerome Phillips' plea. Jerome was originally charged as a co-conspirator with Phillips; however, he later pled guilty to conspiracy to commit murder in the second degree. Phillips argues that "[h]aving decided on the merits to allow him [Jerome] to plead guilty to the lesser conspiracy charge [second-degree murder], the State then defined the nature of the conspiracy, not only for Jerome Phillips, but also for the other two alleged co-conspirators."

It is important to note that Phillips has not cited a single authority which supports this argument. We have repeatedly held that failure to cite authority violates SDCL 15–26A–60(6), and constitutes a waiver of that issue. *State v. Lykken*, 484 N.W.2d 869 (S.D.1992); *Ashker v. Solem*, 457 N.W.2d 473, 478 (S.D.1990); *Nielsen v. McCabe*, 442 N.W.2d 477, 480 (S.D.1989); *State v. Dixon*, 419 N.W.2d 699, 701 (S.D. 1988).

Considering the importance of this issue, however, we will address it. In *State v. Giuliano*, 270 N.W.2d 33, 38 (S.D.1978), the defendant sought to have his conviction for conspiracy dismissed because the conspiracy charge against his co-conspirator was dismissed. In finding his argument to be without merit, we stated: "Similarly, in the conspiracy charge, one can be convicted even though the indictment against all the other conspirators has been dismissed. Such conspirators need not even be charged." *Id.* (quoting *Feldstein v. United States*, 429 F.2d 1092, 1095 (9th Cir. 1970)). That reasoning similarly applies to this case. We believe Phillips' argument is equally without merit.

## III.

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING THE TESTIMONY OF TWO WITNESSES.

Phillips argues that the trial court abused its discretion by allowing William Erdman and Donald Janz to testify. "The

evidentiary rulings of a circuit court will be disturbed only if the court abused its discretion." *State v. Hanson*, 456 N.W.2d 135, 138 (S.D.1990); *State v. Bartlett*, 411 N.W.2d 411, 414 (S.D.1987); *State v. Olson*, 408 N.W.2d 748, 752 (S.D.1987); *State v. McDowell*, 391 N.W.2d 661, 666 (S.D. 1986).

### A. William Erdman

■ Phillips argues that Erdman's testimony was irrelevant, prejudicial, improper character evidence, and improper bad act evidence. Erdman, who had known Gibbs since 1984, testified as to his observations of Gibbs' physical condition and the condition of Gibbs' home during the time Phillips and Christenson were living with Gibbs. Specifically, Erdman testified that the house had a strong odor of dog urine and body odor and that Gibbs' physical condition had deteriorated and he seemed disoriented.

SDCL 19–12–1 provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See State v. Brings Plenty*, 459 N.W.2d 390, 398 (S.D.1990). "Any fact that tends to connect [Phillips] to the commission of the crime is relevant." *Id.; State v. Reutter*, 374 N.W.2d 617, 625 (S.D.1985); *State v. Johnson*, 316 N.W.2d 652, 654 (S.D.1982). "Relevance is a precursor to the admittance of any evidence...." *State v. Grooms*, 399 N.W.2d 358, 361 (S.D.1987); *State v. Means*, 363 N.W.2d 565, 568 (S.D. 1985); *State v. Wedemann*, 339 N.W.2d 112, 115 (S.D.1983). Once the trial court deems it relevant, the evidence is only admissible if it is more probative than prejudicial. *Id.;* SDCL 19–12–3. "The trial court is vested with discretion in making its probative—prejudicial determination, and upon appeal, the trial court's ruling will not be disturbed absent an abuse of its discretion." *Grooms*, 399 N.W.2d at 361; *Holland*, 346 N.W.2d at 307. We need not reach the second part of the test, since the evidence was not relevant.

The time period which Erdman's testimony related to was the fall of 1989. The conspiracy to murder Gibbs was not formulated until January, 1990. We fail to see how Erdman's testimony connected Phillips to a conspiracy to kill Gibbs.

While this testimony was irrelevant, it was harmless error to admit it. " 'Prejudicial error' is error which in all probability must have produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it." *State v. Michalek*, 407 N.W.2d 815, 818 (S.D.1987); *State v. Dokken*, 385 N.W.2d 493, 498 (S.D.1986); *State v. Reddington*, 80 S.D. 390, 396, 125 N.W.2d 58, 62 (1963).

"SDCL 23A–44–14 defines harmless error as '[a]ny error, defect, irregularity or variance which does not affect substantial rights[.]' " *Michalek*, 407 N.W.2d at 819. *See also State v. Younger*, 453 N.W.2d 834, 838 (S.D.1990). In *United States v. Hasting*, 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96, 107 (1983), the Supreme Court framed the question the reviewing court must ask: "Absent [the alleged error] ... is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?"

We believe beyond a reasonable doubt that the jury would have returned a guilty verdict on the conspiracy charge even absent the foregoing error.

### B. Donald Janz

■ Phillips argues that improper rebuttal testimony was offered. During Christenson's defense, she called Carol Picard, the director of the Career Learning Center in Rapid City, South Dakota, to testify. Picard testified that Christenson read and performed math at a second-grade level and that she was probably not intelligent enough to conspire to commit a crime. State cross-examined Picard. Thereafter, the trial court admitted a stipulation that Christenson had an I.Q. of 74, which falls within the lowest four percent of the general population.

State then called as a rebuttal witness Donald Janz, a counselor and psychotherapist who performed a psychological evalua-

tion on Jerome. Janz concluded that Jerome's I.Q. was 88, that he was upset and crying for help, that he had a number of depressive symptoms, and that he was a very dependent individual with very low self-esteem. It is important to point out that Jerome testified as one of State's witnesses in its case-in-chief.

SDCL 23A–24–2(4) provides:

After a jury has been impaneled and sworn, a trial must proceed in the following order:

. . . .

(4) The parties may then, respectively, offer rebutting evidence only, unless the court, for good reason, in furtherance of justice or to correct an evident oversight, permits them to offer evidence upon their original case[.]

State argues that Janz' testimony properly rebutted Picard's testimony regarding Christenson's mental capability. We first note that Janz' testimony concerning Jerome's psychological evaluation, if somehow relevant to the conspiracy, may have been admissible in State's case-in-chief. However, we find it was improper rebuttal testimony as it did not rebut the evidence presented by Christenson or Phillips. Furthermore, given the timing of its introduction, it had little or no relevance. *Brings Plenty*, 459 N.W.2d at 398.

However, as with the testimony from Erdman, Phillips has failed to show how this testimony prejudiced her. *Michalek*, 407 N.W.2d at 818–19; *Dokken*, 385 N.W.2d at 498.

Affirmed.

WUEST, HENDERSON, SABERS, and AMUNDSON, JJ., concur.