2000 SD 57

Laurie BARNAUD and Bernard Barnaud, Plaintiffs and Appellants,

v.

BELLE FOURCHE IRRIGATION DISTRICT, Randy Oliver, Individually and as Manager of the Belle Fourche Irrigation District, and Gary Brunner, Darrel Cox, Steve Gatzke, Harlan Aplo, Art Persche, Robert Ruff, and Walter Stumpf, Individually and as the Board of Directors of the Belle Fourche Irrigation District, Defendants and Appellees.

No. 20909.

Supreme Court of South Dakota.

Argued Oct. 19, 1999.

Decided May 3, 2000.

Dorothy A. Dygas, Belle Fourche, Attorney for plaintiffs and appellants.

Paul S. Swedlund, Marty J. Jackley and G. Verne Goodsell of Gunderson, Palmer, Goodsell & Nelson, Rapid City, Attorneys for defendants and appellees.

AMUNDSON, Justice.

[¶ 1.] Laurie and Bernard Barnaud (Barnauds) appeal the granting of summary judgment in favor of Belle Fourche Irrigation District (District) and the denial by the trial court of Barnauds' motion to vacate the judgment. We affirm.

## FACTS

[¶ 2.] The Canal Act of 1890 (Canal Act), 26 Stat. 391, 43 USC § 945, expressly reserved to the federal government an easement of right-of-way across all lands west of the 100th meridian. The 100th meridian runs in a north-south direction through South Dakota in the vicinities of Gettysburg, Presho, and Winner. Congress passed the Canal Act to allow construction of canals and ditches to provide irrigation to the arid western lands of South Dakota to encourage homesteading of those lands.

[¶ 3.] District was formed in 1904 as a private corporation known as Belle Fourche Valley Water Users' Association (Association). Association was formed to benefit landowners by delivering water through irrigation works constructed by the United States Department of the Interior pursuant to the Reclamation Act of 1902 (Reclamation Act). The construction began in 1905 under the U.S. Secretary of Interior acting by and through the Bureau of Reclamation (Bureau). The construction consisted of miles of canals, ditches, drainage areas, the Orman Dam, and other irrigation equipment and structures. District, which was responsible for repayment of the construction costs, passed the repayment costs to the water users through the payment of fees.

[¶ 4.] Until 1949 the Bureau operated, maintained and rehabilitated the works it had constructed. In 1949 the Bureau entered into a contract with District, transferring to District the responsibility for and cost of operating and maintaining the irrigation system. After years of attempted repayments by District, the federal government and District entered into an amended repayment contract in 1984. The 1984 contract authorized District, on behalf of the federal government, to coordinate district improvement construction that would be paid for by the federal government. In addition, the contract transferred "all of the Belle Fourche Unit project works including the irrigation canals, laterals, drains, and appurtenant structures" to District. Under the contract, District was required, "without expense to the United States," to "care for, operate, and maintain the transferred works in full compliance with the contract." The contract specifically noted that title to the project facilities would remain in the name of the United States.

[¶ 5.] In the Spring of 1993, Barnauds purchased a parcel of land within the District. During 1993 District was involved in

a federally funded irrigation district improvement project to increase the efficiency of District's irrigation ditches through the piping and infilling of ditches. In the course of its construction work, contractors hired by District dismantled 7/10 of a mile of fence on Barnauds' land to allow construction equipment passage upon the right-of-way and to access the ditch to construct improvements.

[¶ 6.] District had a policy which allowed construction workers to dismantle a fence by rolling up the wire and piling the posts in an area designated by the landowner. However, replacement of the fence was the responsibility of the landowner. The ditch project lasted from the Fall of 1993 to the Spring of 1994. During this time, Barnauds installed a temporary electric fence to contain their livestock. Two District employees assisted Barnauds in relocating approximately seventy steel fence posts to form a temporary fence line approximately 125 feet from the edge of the county road. The remainder of the fence was constructed at Barnauds' expense.

[¶ 7.] The added cost of building and maintaining an electric fence placed Barnauds in a cash-shortage position. Due to their cash shortage and possible inability to pay District's assessment for water delivered in 1995, Barnauds asked District to compensate them for removing their fence. When the pipe installation was completed, District refused to replace Barnauds' permanent fence that had been removed or provide compensation to them for removing their fence. Believing that they had to pay for their own fence replacement twice, once for installation of the pipe and another for the loss of productivity to their land, Barnauds brought an action against District in small claims court, which was later removed to circuit court by Barnauds.[1]

[¶ 8.] The trial court granted summary judgment for District, finding that the fence was within the Canal Act right-of-way easement and District acted within its

authority in removing the obstruction from the right-of-way. The trial court advised Barnauds that jurisdiction for any claim for compensation they sought would lie in federal district court. The court also granted District's motion to dismiss all named district board members in their individual capacity pursuant to SDCL 15–6–12(b)(5) based upon Barnauds' failure to state a claim against these individuals.

[¶ 9.] Barnauds appeal, raising the following issues:

1. Whether the circuit court erred in granting the district summary judgment and dismissing as to the individual defendants by reason of the grant of summary judgment.

2. Whether the circuit court erred further in denying Barnauds' motion to vacate the judgment.

## DECISION

[¶ 10.] **1. Whether the circuit court erred in granting the District summary judgment and dismissing as to the individual defendants by reason of the grant of summary judgment.**

*a. Summary Judgment*

[¶ 11.] In addressing a summary judgment motion, "[t]he moving party has the burden of proving that under the substantive law and the evidence presented there is no genuine issue of material fact." *Nelson v. Belle Fourche Irrigation Dist.*, 539 N.W.2d 682, 683 (S.D.1995) (citing *Tipton v. Town of Tabor*, 538 N.W.2d 783, 785 (S.D.1995)). Our standard of review in a summary judgment case is well settled.

> Summary judgment is authorized 'if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.' SDCL 15–6–56(c). We will affirm only

---

1. In their complaint, Barnauds alleged unlawful removal of the fence without due compensation, trespass, and violation of their due process rights pursuant to 42 USC § 1983.

when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the nonmoving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

*Shevling v. Butte County Bd. of Comm'rs,* 1999 SD 88, ¶ 13, 596 N.W.2d 728, 730 (quoting *Estate of Shuck v. Perkins County,* 1998 SD 32, ¶ 6, 577 N.W.2d 584, 586 (internal citations omitted)).

[¶ 12.] In the present case, there is no dispute that a Canal Act easement exists on Barnauds' land pursuant to an express reference to the Canal Act in Barnauds' original November 22, 1916, land patent.[2] Barnauds do dispute the extent of the easement and claim that they are entitled to just compensation for the removal of their fence and its relocation 125 feet from the ditch. It is well settled that the "Fifth Amendment provides that private property shall not be taken for public use without just compensation." *United States v. 106.64 Acres of Land, Etc., State of Nebraska,* 264 F.Supp. 199, 201 (D.Neb.1967). In *106.64 Acres of Land,* the district court of Nebraska held that "[n]o constitutional right to just compensation arises when an easement is exercised pursuant to 43 USC[ ] § 945." *Id.* The only right to compensation is statutorily authorized by 43 USC § 945a. *Id.* This section, passed on October 4, 1966, states,

> Notwithstanding the existence of any reservation of right-of-way to the United States for canals under section 945 of this title, or any State statute, the Secretary of Interior shall pay just compensation, including severance damages, to the owners of private land utilized for

ditches and canals in connection with any reclamation project, or any unit or any division of a reclamation project, provided the construction of said ditches or canals commenced after January 1, 1961, and such compensation shall be paid notwithstanding the execution of any agreements or any judgments entered in any condemnation proceeding, prior to September 2, 1964.

43 USC § 945a (1986).

[¶ 13.] In lieu of § 945a, 43 USC § 945b must also be considered. Section 945b clearly and unambiguously states,

> *Jurisdiction of an action brought by* the United States or the *landowner for the determination of just compensation pursuant to section 945a* of this title *is hereby conferred on the United States district court in the district in which any such land is situated,* without limitation to the amount of compensation sought by such suit....* (Emphasis added.)

The statute clearly states that an action by a landowner seeking "just compensation" under § 945a must be brought in United States District Court. Barnauds' claim for just compensation under § 945a would have to be brought in United States District Court of South Dakota. Considering § 945a and § 945b together, an action for just compensation under § 945a clearly must be brought in federal court.

[¶ 14.] Next, Barnauds claim that state law, not federal law, should be applied in this case. The basis for Barnauds' contention is that section eight of the Reclamation Act superseded the Canal Act of 1890 and required irrigation districts to comply with state law. Section eight provides:

> *Nothing in this Act shall be construed as affecting or intended to affect or to in*

---

**2.** The Canal Act, which is codified under 43 USC § 945, provides:

> In all patents for lands taken up after August 30, 1890, under any of the land laws of the United States or on entries or claims validated by this act west of the one hun-

dredth meridian, it shall be expressed that there is *reserved from the lands* in said patent described, *a right of way thereon for ditches or canals* constructed by the authority of the United States. (Emphasis added.)

*any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation,* or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof.

43 USC § 383 (1986) (emphasis added).

[¶ 15.] In *Ivanhoe Irrigation Dist. v. McCracken,* 357 U.S. 275, 291, 78 S.Ct. 1174, 1183–84, 2 L.Ed.2d 1313, 1325 (1958), the United States Supreme Court interpreted § 8 of the Reclamation Act to "merely require[ ] the United States to comply with state law when, in the construction and operation of a reclamation project, it becomes necessary for it to acquire water rights or vested interests therein." A clear reading of § 8 shows that this section deals with the use of water and water rights. The United States Supreme Court noted this when they stated that "the acquisition of water rights must not be confused with the operation of federal projects." 357 U.S. at 291, 78 S.Ct. at 1184, 2 L.Ed.2d at 1325.

[¶ 16.] In the present case, this Court is faced with a "federal project" to make District's irrigation ditches more efficient. The rehabilitation work was achieved through the utilization of the Canal Act right-of-way easement granted to the District pursuant to the 1949 contract. The use of a right-of-way and the subsequent removal of obstacles to that easement have nothing to do with water rights. *See California v. United States,* 438 U.S. 645, 664, 98 S.Ct. 2985, 2995, 57 L.Ed.2d 1018, 1032 (1978) (noting that the Reclamation Act "clearly provided that state water law would control in appropriation and later distribution of water"). Barnauds' reli-

ance on § 8 of the Reclamation Act is therefore misplaced.

[¶ 17.] Under the law, 43 USC § 945b requires that an action under § 945a, for just compensation, is within the jurisdiction of the United States District Court. The circuit court's decision on the existence of the easement and jurisdiction over the just compensation issue was in accordance with the law; therefore, we find the trial court did not err in granting District's motion for summary judgment.

### b. Dismissal of individually named defendants

[¶ 18.] In the present case, the trial court granted District's motion to dismiss pursuant to SDCL 15–6–12(b)(5) on behalf of all individually named defendants (defendants) due to Barnauds' failure to state a claim. It is well settled that "[a] motion to dismiss under Rule 12(b)(5) tests the law of a plaintiff's claim, not the facts which support it." *Thompson v. Summers,* 1997 SD 103, ¶ 5, 567 N.W.2d 387, 390 (citing *Stumes v. Bloomberg,* 1996 SD 93, ¶ 6, 551 N.W.2d 590, 592; *Schlosser v. Norwest Bank South Dakota,* 506 N.W.2d 416, 418 (S.D.1993)). Under *Schlosser,* the trial court is directed to consider,

the complaint's allegations and any exhibits which are attached. The court accepts the pleader's description of what happened along with any conclusions reasonably drawn therefrom. The motion may be directed to the whole complaint or only specified counts contained in it. . . . 'In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' [quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) ]. The question is whether in the light most favorable to the plaintiff, and with doubt resolved in his or her behalf, the complaint states *any valid claim of relief.*

The court must go beyond the allegations for relief and 'examine the complaint to determine if the allegations provide for relief on *any possible theory.*'

*Id.* (quoting *Schlosser,* 506 N.W.2d at 418 (emphasis in original)) (citation omitted). An appeal of a motion to dismiss presents a question of law and our standard of "review is de novo, with no deference given to the trial court's legal conclusions." *Id.* (citing City of Colton v. Schwebach, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771).

[¶ 19.] All that Barnauds argue in their brief is that defendants trespassed upon their property, deprived them of compensation which they were constitutionally and statutorily entitled, and District's denial of Barnauds' right to just compensation constituted a compensable action under 42 USC § 1983.

[¶ 20.] Barnauds fail to cite any authority for their arguments that the individual district board members should not have been dismissed pursuant to SDCL 15–6–12(b)(5) and that the District's actions made them liable under § 1983. It is well settled that " 'failure to cite authority violates SDCL 15–26A–60(6) and constitutes a waiver of that issue.' " *Gleason v. Peters,* 1997 SD 102, ¶ 20, 568 N.W.2d 482, 486 (quoting *State v. Phillips,* 489 N.W.2d 613, 616 (S.D.1992)). As such, both issues are deemed waived.

[¶ 21.] **2. Whether the circuit court erred further in denying Barnauds' motion to vacate the judgment.**

[¶ 22.] In the present case, Barnauds moved to vacate the trial court's judgment based upon newly discovered evidence pursuant to SDCL 15–6–60(b).[3] This Court has repeatedly noted that a Rule 60(b) motion is equitable in nature and is designed to " 'preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts.' " *Hrachovec v. Kaarup,* 516 N.W.2d 309, 310–11 (S.D.1994) (quoting *Peterson v. La Croix,* 420 N.W.2d 18, 19 (S.D.1988) (citations omitted)).

[¶ 23.] It is well settled that "[t]he decision to grant or deny a Rule 60(b) motion rests within the sound discretion of the trial court and will not be disturbed on appeal except for abuse." *Id.* at 311 (citing *Gold Pan Partners, Inc. v. Madsen,* 469 N.W.2d 387 (S.D.1991); *Tingle v. Parkston Grain Co.,* 442 N.W.2d 252 (S.D. 1989); *Clarke v. Clarke,* 423 N.W.2d 818 (S.D.1988); *Haggar v. Olfert,* 387 N.W.2d 45, 51 (S.D.1986); *Peterson,* 420 N.W.2d at 19; *Matter of T.M.B.,* 416 N.W.2d 260 (S.D.1987)). An abuse of discretion is " 'a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.' " *Id.* (quoting *Herndon v. Herndon,* 305 N.W.2d 917, 918 (S.D.1981)). This Court will review the matter to determine " 'whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached the conclusion.' " *Id.* (quoting *Dacy v. Gors,* 471 N.W.2d 576 (S.D.1991) (citation omitted)).

[¶ 24.] To prevail on a motion for relief of a judgment under SDCL 15–6–60(b) based upon newly discovered evidence, the moving party (Barnauds) must prove the following:

> (1) the evidence was discovered after trial;

3. SDCL 15–6–60(b) provides in pertinent part:
> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
> . . . .
> (2) Newly discovered evidence which by due diligence could not have been discov-

ered in time to move for a new trial under § 15–6–59(b);
> . . . .
> The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken. . . .

(2) [the moving party] exercised due diligence to obtain the evidence for trial;

(3) the evidence is not merely cumulative or impeaching;

(4) the evidence is material; *and*

(5) the evidence is such that a new trial would probably produce a new verdict.

*Hrachovec*, 516 N.W.2d at 312 (citing *Haggar*, 387 N.W.2d at 51) (emphasis in original). The language clearly reflects that "the failure to prevail on any one of these elements defeats a party's ability to obtain relief under Rule 60(b)(2)." *Id.*

[¶ 25.] Barnauds' contentions arise primarily out of the "Belle Fourche Irrigation District Policies" (Policy) updated by District in 1993. This claim by Barnauds originated out of District's response to Barnauds' interrogatories; specifically, question number 24 which requested District to identify any document related to the subject matter of Barnauds' complaint. District's manager, Randy Oliver, responded with "none known at this time."

[¶ 26.] Barnauds had received a copy of the policy, but the policy did not contain an attached section referred to as "Land Policy Memorandum 87–2," which discussed the "Conflicts in Use on 1890 Canal Act Right–of–Way" (conflicts memo). The table of contents to the policy identified that the memorandum was "attached," when in fact, the memorandum was not attached to Barnauds' copy of the policy. The memorandum, dated October 1, 1986, was addressed from the Associate Solicitor, Energy and Resources, and was attached to a February 10, 1987, memorandum entitled "Use and Control of 1890 Canal Act Rights–of–Way" (use memo). District attached and relied upon a copy of the "use memo" in its motion for summary judgment, but did not include the originally attached "conflicts memo." Laurie Barnaud discovered the existence of the memorandums after she was elected to the district board of directors and received a copy of the memorandum along with other information regarding the District.

[¶ 27.] As previously mentioned, Barnauds must prove every element of the Rule 60(b)(2) test in order to prevail. It is undeniable that Barnauds discovered the existence of the memorandum after trial. The trial had long since been over when Laurie Barnaud was elected to the District's board and received a copy of the memorandums. It is also undeniable that Barnauds exercised due diligence in obtaining evidence for trial. Barnauds made motions for discovery and served interrogatories on the defendants. Barnauds easily meet the first two elements of their burden of proof.

[¶ 28.] Barnauds failed to meet the third element, "the evidence is not merely cumulative or impeaching." "Cumulative evidence" is defined as "[a]dditional or corroborative evidence to the same point. That which goes to prove what has already been established by other evidence." *Black's Law Dictionary* 380 (6thEd. 1990). The gist of the "conflicts memo" is a summation and accumulation of case law and research on the 1890 Canal Act. Everything in the memo is discoverable through diligent research by an attorney. In addition, the evidence in the "conflicts memo" presents nothing different than was presented at the motions hearing. The trial court did not abuse its discretion in denying Barnauds' motion to vacate pursuant to SDCL 15–6–60(b)(2).

[¶ 29.] We affirm.

[¶ 30.] MILLER, Chief Justice, and SABERS, KONENKAMP, and GILBERTSON, Justices, concur.