2001 SD 12

**Ron DAHL, Plaintiff and Appellant,**

v.

**COMBINED INSURANCE COMPANY, Defendant and Appellee.**

**No. 21291.**

Supreme Court of South Dakota.

Argued Sept. 21, 2000.

Decided Jan. 17, 2001.

Michael A. Hauck, Patrick J. Knecht (on the brief) Sioux Falls, SD, Attorneys for plaintiff and appellant.

Thomas J. Welk and Tamara A. Wilka of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, SD, Attorneys for defendant and appellee.

SABERS, Justice

[¶ 1.] Ron Dahl was employed by Combined Insurance Company of America (Combined) as a District Manager. Dahl discovered that certain premiums collected by Combined's agents were not being submitted to Combined. Dahl reported the missing premiums to the South Dakota Division of Insurance (Division) and he was later terminated. Dahl brought suit for 1.) wrongful discharge invoking the public policy exception to the employment at-will doctrine; and, 2.) misprison of a felony. The circuit court granted summary judgment in favor of Combined. Dahl appeals. We reverse and remand issue 1 for trial.

## FACTS

[¶ 2.] In his statement of material facts to the trial court, Dahl stated: Dahl was employed by Combined from 1975 until 1995 as an at-will employee. Dahl began his employment as an insurance agent and eventually achieved the position of District Manager for Combined's District 10–4.[1] During the end of 1993 Dahl learned that one or more of the agents or managers working under him had collected nearly $6,000 in premiums and had not remitted these premiums to Combined. Combined conducted an internal investigation but was unable to ascertain what person or persons had misappropriated the money. Based on the inability to identify the person or persons responsible, Combined charged Dahl one-third of the missing premiums, withholding $1,799.33 from his compensation.

[¶ 3.] Dahl informed Combined that he planned to report the missing premiums to the Division for additional investigation. On more than one occasion Dahl was told that if he reported the loss to the Division he would be terminated. In spite of these warnings, Dahl reported the missing premiums to the Division in May of 1994. The Division investigated the loss but was unable to identify the source or sources of the missing premiums. On June 17, 1995, Dahl was terminated.

[¶ 4.] Combined moved for summary judgment. Combined asserted that no cause of action existed on the facts alleged by Dahl, and that it was entitled to a judgment as a matter of law. Dahl responded with a motion for partial summary judgment seeking a declaration that the causes of actions asserted in his complaint were valid. The circuit court granted Combined's motion for summary judgment. Dahl appeals.

## STANDARD OF REVIEW

[¶ 5.] Our standard of review for summary judgment is well-established:

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists.

---

1. The district managed by Dahl consisted of several counties in eastern South Dakota.

Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Campion v. Parkview Apartments*, 1999 SD 10, ¶ 22, 588 N.W.2d 897, 902 (quoting *Wildeboer v. SD Junior Chamber of Comm.*, 1997 SD 33, ¶ 10, 561 N.W.2d 666, 668–69). "The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." *Wildeboer*, 1997 SD 33, ¶ 10, 561 N.W.2d at 668–69 (quoting *State Dep't of Revenue v. Thiewes*, 448 N.W.2d 1, 2 (S.D.1989)).

[¶ 6.] **WHETHER THE PUBLIC POLICY EXCEPTION TO THE EMPLOYMENT AT WILL DOCTRINE PROTECTS FROM RETALIATORY DISCHARGE THOSE WHO REPORT CRIMINAL OR UNLAWFUL ACTIVITY TO A SUPERVISOR OR OUTSIDE AGENCY.**

[¶ 7.] The South Dakota legislature has clearly defined the employment at will doctrine. "An employment having no specified term may be terminated at the will of either party...." SDCL 60–4–4. The potentially harsh effects of the at-will doctrine have been tempered in South Dakota by the adoption of the public policy exception. *See Johnson v. Kreiser's Inc.*, 433 N.W.2d 225 (S.D.1988); *Niesent v. Homestake Min. Co.*, 505 N.W.2d 781 (S.D.1993).

[¶ 8.] Public policy is primarily determined by the constitution, statutes and judicial decisions. *Johnson*, 433 N.W.2d at 227 (citing *State ex rel. Meierhenry v. Spiegel Inc.*, 277 N.W.2d 298 (S.D.1979); *Bartron v. Codington County*, 68 S.D. 309, 2 N.W.2d 337 (1942)). "This Court [has] held that a cause of action for

wrongful discharge arises on behalf of an employee where an employer's motivation for termination contravenes a clear mandate of public policy." *Niesent*, 505 N.W.2d at 783. In *Johnson*, we stated that "[a]n employee has a cause of action for wrongful discharge when the employer discharges him in retaliation for his refusal to commit a criminal or unlawful act. It is repugnant to public policy to expect an employee to commit such acts in order to save his job." *Johnson*, 433 N.W.2d at 227.[2] Additionally, this court has held that an employee discharged for filing a worker's compensation claim has a cause of action under the public policy exception. *Niesent*, 505 N.W.2d at 783. A discharge in either of these situations "contravenes a clear mandate of public policy." *Niesent*, 505 N.W.2d at 783.

[¶ 9.] Dahl had knowledge that approximately $6,000 collected in premiums had not been remitted to Combined. Dahl believed employees working under his control had taken the money. Combined investigated but was unable to identify the person or persons responsible. Combined reduced Dahl's compensation by $1,799.33 as a result of this loss. Dahl reported the loss to the Division for further investigation. He was terminated and he claims that his termination was a result of this disclosure. This disputed claim creates a genuine issue of material fact.

[¶ 10.] Dahl states a cause of action for wrongful discharge under the public policy exception. Dahl claims Combined impermissibly forced Dahl to choose between reporting the loss or losing his job. Whether Dahl was demoted and quit, as claimed by Combined, or whether said demotion constituted a termination, as claimed by Dahl are genuine issues of material fact for determination by a jury.

---

2. In *Johnson,* an at-will employee was discharged for refusing to participate in the fraudulent scheme of a corporate officer.

*State v. Thiewes,* 448 N.W.2d 1, 3 (S.D. 1989).

[¶ 11.] In *Johnson* and *Niesent* this court held that "a cause of action for wrongful discharge arises on behalf of an employee where an employer's motivation for termination contravenes a clear mandate of public policy." *Johnson,* 433 N.W.2d at 227; *Niesent,* 505 N.W.2d at 783. "To state a cause of action under this exception, the employee must plead and prove that a substantial public policy may have been violated." *Niesent,* 505 N.W.2d at 783 (quoting *Johnson,* 433 N.W.2d at 227; *Thompson v. St. Regis Paper Co.,* 685 P.2d 1081, 1089 (1984)).[3]

[¶ 12.] Whistleblowing,[4] or the reporting of unlawful or criminal conduct to a supervisor or outside agency, plays an invaluable role in society. As recognized by courts considering this issue, "[p]ublic policy favors the exposure of crime, and the cooperation of citizens possessing knowledge thereof is essential to effective implementation of that policy. Persons acting in good faith who have probable cause to believe crimes have been committed should not be deterred from reporting ...." *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill. Dec. 13, 421 N.E.2d 876, 880 (1981). As stated by the Arizona Supreme Court:

> We believe that whistleblowing activity *which serves a public purpose should be protected. So long as employees' actions are not merely private or proprietary, but instead seek to further the public good, the decision to expose illegal or unsafe practices should be en-*couraged. We recognize that there is a tension between the obvious societal benefits in having employees with access to information expose activities which may be illegal or which may jeopardize health and safety, and accepted concepts of employee loyalty, nevertheless we conclude that on balance actions which enhance the enforcement of our laws or expose unsafe conditions, or otherwise serve some singularly public purpose, will inure to the benefit of the public.

*Wagner v. City of Globe,* 150 Ariz. 82, 722 P.2d 250, 257 (1986) (emphasis added). We recognize, as the Arizona Supreme Court did in *Wagner,* that only whistleblowing which promotes the public good is protected by the public policy exception. This exception cannot be invoked by employees to primarily protect their proprietary interests, exact revenge on an employer, or for personal gain. If on remand, Combined proves that the reporting was solely for proprietary gain or retaliation against the company, then Dahl would not be entitled to the protection of this exception.

[¶ 13.] Indeed, there is no public policy that can be said to be more basic or necessary than the enforcement of the state's criminal code or the protection of the life and property of its citizens. *See Palmateer,* 52 Ill.Dec. 13, 421 N.E.2d at 879. The laws of the State of South Dakota evidence this basic understanding. *See e.g.,* SDCL 22–11–12 (mandating that any person with knowledge of a felony report the same to the proper authorities or be

---

**3.** Whether a termination is found to violate a clear mandate of public policy is a question of law. *Niesent,* 505 N.W.2d at 783 (quoting *Brockmeyer v. Dun and Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834 (1983); *Brown v. Physicians Mutual Ins. Co.,* 679 S.W.2d 836 (1984)). Public policy may be found in constitutional or statutory provisions or schemes and judicial opinion. *Johnson,* 433 N.W.2d at 227; *Niesent,* 505 N.W.2d at 783.; *Bartron,* 2 N.W.2d at 337.

**4.** This term derives from:

> [T]he act of an English bobby blowing his whistle upon becoming aware of the commission of a crime to alert other law enforcement officers and the public within the zone of danger. Like this corner law enforcement official, the whistleblower sounds the alarm when wrongdoing occurs on his or her 'beat,' which is usually within a large organization.

*Winters v. Houston Chronicle Publishing Co.,* 795 S.W.2d 723, 727 (Doggett, J., concurring).

subject to a class 1 misdemeanor); SDCL 23–13–10 through 23–13–12 (requiring those who treat the victims of gunshot wounds to report such treatment to law enforcement); SDCL 22–11–6 (obstructing a law enforcement officer, jailor or firefighter acting pursuant to his duties is a Class 1 misdemeanor); SDCL 22–11A–5 (concealing an escaped prisoner is a Class 5 felony); and SDCL 22–3–3 (any person aiding, abetting, or advising in the commission of a crime is guilty as a principal).

[¶ 14.] "The law is feeble indeed if it permits [an employer] to take matters into its own hands by retaliating against its employees who cooperate in enforcing the law." *Palmateer*, 52 Ill.Dec. 13, 421 N.E.2d at 880. As acknowledged by the New Mexico Supreme Court, "the employees' dilemma is one of balancing a public interest against the potential of private loss, with the employee losing either way." *Vigil v. Arzola*, 102 N.M. 682, 699 P.2d 613, 618 (N.M.App.1983) *rev'd in part and remanded*, 101 N.M. 687, 687 P.2d 1038 (1984), *overruled in part, Chavez v. Manville*, 108 N.M. 643, 777 P.2d 371 (1989). We have recognized that when faced with such a dilemma "many employees ... would choose to retain their jobs." *Niesent*, 505 N.W.2d at 784. Such a result is untenable for the employee and the citizens of South Dakota.

[¶ 15.] Dahl's complaint states a cause of action for wrongful discharge in contravention of public policy and we reverse the circuit court's determination. Genuine issues of material fact exist and we remand for factual determinations consistent with this opinion. On remand

> [Dahl] has the burden of proving that the dismissal violates a clear mandate of public policy. Once [Dahl] shows this, the burden shifts to [Combined] to prove that the dismissal was for reasons other than those alleged by [Dahl]. To prevail, [Dahl] must prove by a preponderance of the evidence that the discharge was for an impermissible reason.

*Johnson*, 433 N.W.2d at 227–28. We are not saying that Dahl has a good case. We are only saying under South Dakota law, he gets a chance to prove it to a jury. *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19, 21 (S.D.1968).

[¶ 16.] In view of our holding on this issue, we affirm the trial court on Dahl's claim of misprison of a felony, if any, as it would be included within the whistleblower public policy exception.

[¶ 17.] Reversed and remanded for trial.

[¶ 18.] MILLER, Chief Justice, and KONENKAMP and GILBERTSON, Justices, concur.

[¶ 19.] AMUNDSON, Justice, dissents.

AMUNDSON, Justice (dissenting).

[¶ 20.] It is true that Dahl is entitled to all favorable inferences and we should view his version of the facts as true, for summary judgment purposes. *Barnaud v. Belle Fourche Irrigation Dist.*, 2000 SD 57, ¶ 11, 609 N.W.2d 779, 781 (citing SDCL 15–6–56(c)). This rule of law is tempered by the equally important rule that Dahl must make more than bare assertions in order to survive a motion for summary judgment. *Id.* Dahl must purport more than the mere factual allegation that he was terminated. *Sorrels v. Queen of Peace Hosp.*, 1999 SD 133, ¶ 18, 601 N.W.2d 606, 610 (Konenkamp, J., concurring). He must point to specific evidence to support his position before this "disputed" fact rises to the level of a genuine issue of material fact. The bare allegation of "termination" is not enough in light of the overwhelming evidence to the contrary. *Id.* Even if there is a need for a "whistleblower" exception to the employment at-will doctrine, the underlying facts of this case do not cry out for its adoption here.

[¶ 21.] Dahl was demoted not terminated. He concedes that he received a letter of assignment following a meeting where

he claims he was fired. Instead of responding by performing the assignment, Dahl willfully ignored it. The majority misstates the facts when it says "Combined impermissibly forced Dahl to choose between reporting the loss or losing his job." This is simply not true. By deposition, Dahl was asked:

Q: When you got this letter did you not call somebody up and ask about it?

A: No. My lawyer at that time said just ignore it.

When questioned by deposition, he also admitted that Combined asked him "many times" to perform certain assignments as a sales representative. Dahl defiantly rejected any such assignments. The facts are clear: Dahl received this demotion, and he chose, albeit at his attorney's direction, not to respond to his new assignment. Dahl cannot take a position more favorable to him than what his testimony would allow. As we have often stated, "a party cannot claim benefit of a version of the facts more favorable to his contentions than he gave in his own sworn testimony." *Chord v. Reynolds*, 1999 SD 1, ¶ 19, 587 N.W.2d 729, 733. His claim that he was terminated is without support in the record and does not withstand summary judgment.

[¶ 22.] With Dahl having been demoted, it is doubtful that this Court wishes to extend this already tenuous cause of action to demotions. "A demotion necessarily implies a continuation of service in some different capacity and not a termination." *Adams v. Bd. of Fire and Police Comm'rs of Village of Skokie*, 144 Ill.App.3d 905, 98 Ill.Dec. 606, 494 N.E.2d 728, 730 (1986). This is precisely what happened here. Dahl was asked to take on the duties of sales representative rather than district manager. After it became apparent that Dahl was not willing to perform these duties, he, in effect quit his job. There is a strong common law presumption that an employee may be demoted at-will. This is true because, as a logical extension, an employee may be discharged at-will, thus the "at-will presumption would surely apply to lesser quantums of discipline as well." *Scott v. Pacific Gas & Electric Co.*, 11 Cal.4th 454, 46 Cal.Rptr.2d 427, 904 P.2d 834, 840 (1995).

[¶ 23.] There is no reason to give a legal remedy to those that are demoted, let alone discharged or terminated. Incompetent, disgruntled, or just plain lazy employees now have the ability to threaten suit against their employer because of a "whistleblower" cause of action that is not based on a clear public mandate. Recognizing a retaliation tort for action short of termination could subject employers to torrents of unwarranted and vexatious suits filed by disgruntled employees at every juncture in the employment process.

[¶ 24.] Despite such facts, the majority adopts a "I know it when I see it" approach to determining whether a former employee has a cause of action for wrongful discharge. This is certainly not what the Legislature had envisioned when it codified the employment at-will doctrine. *See* SDCL 60-4-4. It is also important that before we embrace an exception to our well established employment at-will doctrine, that the conduct of the employer "contravenes a clear mandate of public policy." *Niesent v. Homestake Min. Co.*, 505 N.W.2d 781, 783 (S.D.1993). Dahl has failed to show that Combined in reassigning him for funds unaccountable on his watch somehow equates to the clear contravention of public policy. Not only should this Court proceed only if there is a clear public mandate to preserve, but it should also be paramount that this Court fashion its scope of intervention narrowly.

[¶ 25.] Furthermore, the majority's position on public policy is unsound. It depends on the misprision statute as the overriding principal for the adoption of the "whistleblower" exception. The majority states that "there is no public policy that can be said to be more basic or necessary than the enforcement of the state's criminal code or the protection of the life and property of its citizens." While I agree

with this basic premise, it is not relevant to the case at hand. The misprision statute ostensibly employed by Dahl to protect his actions is a farce. It was not until he received notice from Combined that he was about to lose approximately $1800 did he consider reporting the loss of premiums. Only when his pocketbook was about to be affected did he cry wolf. It is also undisputed that his report to the Division was in May of 1994, yet Dahl continued to work for Combined until June of 1995. Thus, Dahl was not demoted or, arguendo, terminated, until more than a year after the events he claims cost him his job. In addition, the only case cited by the majority involving the reporting of a crime is the *Palmateer* case. In fact, in that case, the "whistleblower" reported the crime to the local law enforcement agency. *Palmateer*, 421 N.E.2d at 876. It is fairly obvious that such a scenario here does not exist. To rely on a "whistleblower" exception based on a clear public mandate to enforce the criminal code, one must "blow the whistle" to an agency who could enforce that code. The Department of Insurance is not a law enforcement agency. The majority, even under the most strained view, cannot make such a claim. Dahl failed to report to the proper authorities as required by statute. Thus, the misprision statute should not apply.

[¶ 26.] The majority constructs a slippery slope by adopting this cause of action based on these facts. By establishing the precedent in this case, this Court, in effect, would be playing puppet master over the internal management of private business. The Court should not place itself in a position to oversee job transfers, alterations in job duties, and quite perhaps even internal discipline decisions. "The poten-

tial for expansion of this type of litigation is enormous." *Ludwig v. C & A Wallcoverings, Inc.*, 960 F.2d 40, 43 (7th Cir.1992). If we travel down this endless path towards judicial oversight of purely private matters, "[t]he courts then would be called upon to become increasingly involved in the resolution of workplace disputes which center on employer conduct that heretofore has not been actionable at common law or by statute." *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill.2d 29, 206 Ill.Dec. 625, 645 N.E.2d 877, 882 (1994). The Court, by adopting this cause of action, under these facts, amounts to judicial micro-management of employer/employee relations.[5]

[¶ 27.] This Court "should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation" based particularly on the facts in this case, when the violation of a clearly mandated public policy has not been established. *Burnham v. Karl and Gelb, P.C., et al.*, 50 Conn.App. 385, 717 A.2d 811, 815 (1998). The legal quagmire created by the adoption of this new unwarranted exception would place the judiciary inside boardrooms across South Dakota. This Court should exercise judicial restraint by allowing the Legislature to determine the appropriateness of this cause of action. It is not a judicial function to legislate job security.

[¶ 28.] What clearly mandated "public policy" is the foundation in this case? It certainly is not the statutory workers' compensation exception in *Niesent* or the narrow exception involving refusal to commit an unlawful act in *Johnson*. I agree

---

5. It is also important to note that the record clearly indicates that the Department of Insurance's investigation concluded without clearly identifying the culprit of the missing funds. In fact, the Department concluded that mismanagement of funds and the lack of appropriate record keeping hindered its abili- ty to investigate. Thus, the Department's threat to Combined if Combined decided to fire Dahl was wholly irresponsible and unwarranted. This matter is entirely among Dahl, Combined, and the local state's attorney, and not a matter for the Department of Insurance.

with the trial court that Dahl did not carry his burden of showing a violation of clearly mandated public policy in this case.

[¶ 29.] Therefore, I respectfully dissent.