#25619-rev & rem-JKK

**2010 S.D. 97**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ROBERT LEONARD,                                 Plaintiff and Appellee,

v.

STATE OF SOUTH DAKOTA, ex rel
SOUTH DAKOTA REAL ESTATE
COMMISSION,                                      Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE A. PETER FULLER
Judge

* * * *

HEATHER M. LAMMERS BOGARD of
Costello, Porter, Hill,
  Heisterkamp, Bushnell & Carpenter, LLP    Attorneys for plaintiff
Rapid City, South Dakota                          and appellee.

LINDSEY RITER-RAPP
ROBERT C. RITER, JR. of
Riter, Rogers, Wattier & Northrup, LLP    Attorneys for defendant
Pierre, South Dakota                              and appellant.

* * * *

ARGUED ON NOVEMBER 16, 2010

OPINION FILED **12/15/10**

#25619

KONENKAMP, Justice

[¶1.]        Does the assignment of a real estate purchase agreement to a new buyer require the broker to obtain a new agency agreement along with its required disclosures under SDCL 36-21A-130?  The South Dakota Real Estate Commission ruled that a real estate agent committed unprofessional conduct when he failed to execute a new written agency agreement with the new buyer he represented.  On appeal, we conclude that because there was no written agency agreement between the parties sufficient to satisfy SDCL 36-21A-130, the Commission's decision was correct.  The circuit court's ruling to the contrary is reversed.

## Background

[¶2.]        In June 2004, Walter D. Miller hired Garry Neiderworder of Rapid Realty to represent him in the sale of ranch land in Meade County, South Dakota. Neiderworder became both the listing agent and broker.  Russell Engesser wanted to purchase Miller's land and entered into an agency agreement with Robert Leonard, also of Rapid Realty.  Because Leonard and Neiderworder were both affiliated with Rapid Realty and represented the seller (Miller) and the buyer (Engesser), Engesser and Leonard signed an addendum to the agency agreement, creating a limited agency relationship.  On that same day, Engesser offered to purchase Miller's land for $900,000, contingent on the sale of Engesser's land. Miller countered with a request for $930,000, but accepted Engesser's contingency. Engesser accepted Miller's counteroffer, and they signed a purchase agreement, reflecting a sale price of $930,000.  The agreement also noted a backup purchase offer from Bill Gikling for $933,750.

[¶3.]        Ultimately, Engesser was unable to sell his land.  On learning this, Leonard mentioned the land transaction to Daniel Wolken, who expressed an interest.  Leonard gave Wolken a map of the property.  Wolken and his partners, Scott Grimsrud and Norman Rieger (both now deceased), considered purchasing the land through their company, Western Dakota Land, LLC.  Leonard arranged a meeting with Engesser, Wolken, and Grimsrud to discuss Western Dakota's options in light of Gikling's backup offer.  At this meeting, the parties agreed that to effect the sale without triggering the backup offer, Engesser, in exchange for $25,000, would assign his right to purchase the property under the purchase agreement to Wolken and his partners.  The assignment provided,

> I, Russell H. Engesser, the undersigned, for one dollar and other good and valuable consideration, assign all of my interest in and to two certain Purchase Agreements dated June 17th, 2004 between Miller, Seller/Engesser, Buyer, and dated September 10th, 2004 between Hackens, Seller/Engesser, Buyer.  Along with all of the rights, privileges, and obligations set forth therein to.

The executed assignment names Scott A. Grimsrud, Daniel L. Wolken, and Norman L. Rieger as assignees.

[¶4.]        Following the assignment, Leonard gave Wolken copies of certain restrictive covenants on the property.  Wolken questioned Leonard and Neiderworder on the legal ramifications of the covenants.  According to Wolken, Leonard and Neiderworder represented that the covenants would not restrict Western Dakota's ultimate purchase of the property or hamper them from using and developing the property after the purchase.  The parties closed on the sale in October 2004.  Some time later, Western Dakota decided to sell the property by

auction. But it came to light that the map Leonard gave Wolken was incorrect in several respects, and the covenants were more restrictive than Leonard and Neiderworder previously represented. To remove these difficulties, the restricted two hundred and forty acres were withdrawn, and the remaining acres were sold.

[¶5.] Western Dakota, Wolken, and Grimsrud filed a complaint with the South Dakota Real Estate Commission against Leonard and Neiderworder for their representations on the sale of the land, in particular the covenants on the two hundred and forty acres. In addition to the issues raised by Wolken and Grimsrud, the Commission charged that Leonard had violated certain statutory obligations when he failed to execute a new agency agreement with Wolken after Engesser assigned his right to purchase the property to Wolken.

[¶6.] Both Wolken and Leonard appeared at the administrative hearing. Although he considered Leonard his agent, Wolken testified that Leonard never explained the nature of their relationship or discussed any potential conflicts, considering that Neiderworder represented the seller. Leonard testified that he became Wolken's agent when Engesser assigned the purchase agreement to Wolken. Leonard asserted that the assignment of the purchase agreement transferred to Wolken Leonard's agreement with Engesser, and therefore, satisfied the requirement to execute a written agency agreement under SDCL 36-21A-130.

[¶7.] The hearing examiner issued a proposed decision, which the Commission adopted, finding by clear and convincing evidence that Leonard committed unprofessional conduct under SDCL 36-21A-71 when he failed to execute a written agency agreement with Wolken as required by SDCL 36-21A-130.

Neiderworder was exonerated. Leonard received a two-month license suspension, which was held in abeyance on the condition that he successfully complete six hours of training and a three-hour ethics course, and pay assessed costs of $6,176.99 and a $1,000 monetary penalty.

[¶8.]    In Leonard's appeal, the circuit court concluded that the Commission erred as a matter of law when it held that Leonard was required to execute a new agency agreement with Wolken after the assignment of Engesser's purchase agreement. To the court, the assignment of the purchase agreement included the agency agreement between Engesser and Leonard, and therefore, Leonard committed no unprofessional conduct. Now, the Commission appeals.*

## Analysis and Decision

[¶9.]    The purchase agreement assignment provided that Engesser "assign[ed] all of [his] interest in and to" his purchase agreement and "all of the rights, privileges, and obligations set forth therein to." The purchase agreement refers to the agency agreement. Aside from disputing whether this document accomplished an assignment of the agency agreement, the Commission further claims that because SDCL 36-21A-130 mandates that an agency agreement be in

---

\*    Standard of Review: "We review agency decisions the same as the circuit court; there is no presumption that the circuit court's decision was correct." *In re Montana-Dakota Util. Co.*, 2007 S.D. 104, ¶ 6, 740 N.W.2d 873, 876 (citing *U.S. West Commc'n, Inc. v. Pub. Util. Comm'n,* 505 N.W.2d 115, 122-23 (S.D. 1993) (citing *Northwestern Bell v. Pub. Util. Comm'n,* 467 N.W.2d 468, 469 (S.D. 1991))). Our review is controlled by SDCL 1-26-36. We must "give great weight to the findings of the agency and reverse only when those findings are clearly erroneous in light of the entire record." *Williams v. S.D. Dep't of Ag.*, 2010 S.D. 19, ¶ 5, 779 N.W.2d 397, 400 (citation omitted).

(continued . . .)

*writing* and be signed by *all the parties* to the transaction, Leonard was required to obtain a separate written agency agreement bearing Wolken's signature.

[¶10.]     Leonard responds that the language of the assignment between Engesser and Wolken clearly and unambiguously assigned the agency agreement between Engesser and Leonard:  the purchase agreement referred to the agency agreement, and the assignment transferred all the "rights, privileges, or obligations" of the purchase agreement.  Leonard also relies on Wolken's past experience in buying property and asserts that Wolken understood the nature of his agency relationship with Leonard.

[¶11.]     SDCL 36-21A-130 requires that any agency agreement, whether between a broker and a seller, lessor, buyer, or tenant, "be in writing[.]"  The writing "shall contain the proper legal description, the price and terms, the date of authorization, the expiration date, the type of agency relationship established, compensation to be paid, . . . and the signature of all parties."  *Id.*  The agreement "shall provide a clear and complete explanation of the broker's representation of the interests of the seller . . . or buyer. . . .  If the broker represents more than one party in a transaction, the agreement shall state how the representation may be altered." *Id.*

[¶12.]     The mandates of SDCL 36-21A-130 are intended to protect the consumer and ensure that consumers are specifically informed of and accept the

_____

(. . . continued)
     Questions of law, such as contract and statutory interpretation, however, are
     reviewed de novo.  *U.S. West Commc'n, Inc.,* 505 N.W.2d at 122.

nature of the agency relationship. There is no language in the purchase agreement assignment specifically addressing its effect on the agency agreement between Leonard and Engesser. While the assignment transfers to Wolken all Engesser's "rights, privileges, and obligations" in the purchase agreement, nothing in the agreement satisfies Leonard's professional obligations under SDCL 36-21A-130. Realtors cannot delegate to their clients, by way of assignment or otherwise, their professional duty to properly inform their clients by "clear and complete explanation" their "representation of the interests of the seller . . . or buyer[.]" *See* SDCL 36-21A-130. This obligation is all the more fundamental here because Leonard's firm represented both the buyer and the seller. Furthermore, the assignment of the purchase agreement did not satisfy Leonard's obligation under SDCL 36-21A-130 to execute an agency agreement "in writing," which agreement "shall contain . . . the signature of all parties[.]" Under SDCL 36-21A-71, a violation of any provision of SDCL Chapter 36-21A is unprofessional conduct. Because Leonard violated SDCL 36-21A-130, the circuit court erred in overruling the Commission.

[¶13.] We next examine the costs assessed and penalty imposed against Leonard. SDCL 1-26-29.1 allows the Commission to "assess all or part of its actual expenses for the proceeding against the licensee[.]" The Commission assessed costs of $6,176.99 and a penalty of $1,000. In support of its claim that Leonard should be assessed its entire costs, the Commission submitted the following itemized bill:

|  |  | 2/11/09 | 6/19/09 | 8/17/09 | 8/21/09 |  |
|---|---|---|---|---|---|---|
| Jim Robbennolt – Riter Law Firm | Riter Law Firm | 855.00 | 2058.50 |  | 2,162.00 | 5,075.50 |
| Jim Robbennolt | Service of complaint & notice of hearing |  |  |  |  |  |

| Capital Reporting Services Jim Robbennolt | Court Reporting services Witness fees and mileage | 476.00 | 476.00 |
|---|---|---|---|
| | | | 5,551.50 |

The Commission, in its brief to this Court, asserts that the witness fees and mileage should have included a cost of $625.49, which would bring the total to $6,176.99.

[¶14.]     Leonard challenges the Commission's assessment because the Commission failed to itemize what *actual* expenses relate to the case against him alone.  Because the administrative action before the Commission was against both Leonard and Neiderworder, Leonard claims that the assessment should be remanded to the Commission with directions to apportion the expenses and eliminate those attributable to Neiderworder.

[¶15.]     While we think that straight apportionment may not be the proper method for assessing costs, the assessment must reflect the Commission's "actual expenses for the proceeding against the licensee[.]"  *Id.*  Based on the itemization provided by the Commission, and the fact that the matter included proceedings against Neiderworder, the record is insufficient to determine if Leonard was assessed the Commission's *actual* expenses related to him.  We remand to the Commission to ascertain the actual expenses related to the proceeding against Leonard.

[¶16.]     Leonard lastly argues that the $1,000 fine is unreasonable because (1) Wolken's complaint to the Commission did not assert that Leonard failed to execute a written agency agreement (the Commission was the first to bring up that issue in

its formal complaint), and (2) no harm resulted to Wolken as a result of his failure to execute a written agency agreement.

[¶17.] That the Commission was the first to assert the issue of Leonard's failure to execute a written agency agreement is of no consequence. If the Commission believes that "a licensee . . . has engaged or is engaging in conduct constituting grounds for disciplinary action" it may file a complaint with the executive director of the Commission. ARSD 20:69:05:01. Moreover, SDCL 36-21A-68 authorizes the Commission to impose a monetary penalty not to exceed $2,500. We cannot say the Commission abused its discretion when it imposed a $1,000 penalty against Leonard. And the question whether harm resulted from Leonard's violation is not germane to whether he violated his professional responsibilities. The question of harm goes more to the degree of discipline.

[¶18.] Reversed and remanded.

[¶19.] GILBERTSON, Chief Justice, and ZINTER, MEIERHENRY and SEVERSON, Justices, concur.