#26112-rev & rem-SLZ

**2012 S.D. 25**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CHERI ST. PIERRE,                                  Plaintiff and Appellee,

  v.

STATE OF SOUTH DAKOTA, ex rel.
SOUTH DAKOTA REAL ESTATE
COMMISSION,                                        Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE WALLY EKLUND
Judge

* * * *

ROBERT C. RITER, JR.
LINDSEY RITER-RAPP of
Riter, Rogers, Wattier & Brown, LLP
Pierre, South Dakota                               Attorneys for defendant and
                                                   appellant.


KENNETH E. BARKER of
Barker Wilson Law Firm, LLP
Belle Fourche, South Dakota                        Attorneys for plaintiff and
                                                   appellee.


* * * *

ARGUED FEBRUARY 14, 2012

OPINION FILED **04/04/12**

#26112

ZINTER, Justice

[¶1.]        By written company policy, First Choice Realty prohibited its broker associates from signing documents on behalf of buyers and sellers in real estate transactions the company was handling. Cheri St. Pierre, a licensed broker associate with First Choice, violated the policy by signing a real estate listing release on behalf of three sellers she was representing. St. Pierre did not indicate on the signature line that she had signed the release on behalf of the sellers. When initially confronted by First Choice about the matter, she not only failed to disclose that she had signed the document, she attempted to cover up the fact that she had signed the sellers' names. In a subsequent disciplinary proceeding, the South Dakota Real Estate Commission found that St. Pierre had engaged in unprofessional conduct involving dishonesty. The Commission suspended her license for one year, but held the suspension in abeyance on conditions, including the payment of a penalty and repayment of the Commission's attorney's fees. The circuit court reversed the Commission's conditional suspension. We reverse the circuit court and reinstate all terms of the Commission's conditional suspension except the provision requiring the repayment of the Commission's attorney's fees.

*Facts and Procedural History*

[¶2.]        St. Pierre worked as a broker associate for First Choice. First Choice had a written policy that its associates could not sign a contract or real estate form of any kind on behalf of a party in a transaction First Choice was handling. The

-1-

policy also prohibited associates from acting as an attorney-in-fact for such parties.[1] St. Pierre was aware of the policy and did not express disagreement with it.

[¶3.]     In 2007, St. Pierre was First Choice's associate for three sellers: Robert Pagan of Rapid City and his business partners, Keith and Julie Huffman of California. There were two separate listing agreements for the Pagan-Huffman property. The first listing was for the property as an unimproved lot. The second listing was for the same property with a house to be built on the lot. The property was ultimately sold as an unimproved lot under the first listing.

[¶4.]     After the sale was closed, compliance staff at First Choice reviewed the transaction to determine what documentation was left to be completed before St. Pierre could be given her commission. The compliance staff told St. Pierre that she needed to obtain signatures from the three sellers on a company-mandated form releasing the second listing. St. Pierre thought the release was unnecessary and was unhappy about having to obtain the signatures. Twenty to thirty minutes after she was given the release, St. Pierre returned it to First Choice with what appeared to be Pagan's and the Huffmans' signatures. St. Pierre did not initially disclose to

---

1.    The policy provided:

> No Broker Associate, Licensee or Staff person shall sign any contract or form of any kind on behalf of any buyer, seller, or other party to a transaction. No Broker Associate, Licensee or Staff person may act as the attorney-in-fact for any party in connection with any transaction wherein the Company and any Broker Associate are acting as the listing or selling broker regardless of agency relationship. There is not a Real Estate Commission approved form for power of attorney. As a result, Broker Associates and Staff are prohibited from preparing any power of attorney forms for any party.

the compliance staff or indicate on the face of the document that she had signed the release on behalf of Pagan and the Huffmans.

[¶5.]     The compliance staff, however, became suspicious about the signatures because of the short amount of time that had expired, the fact that the Huffmans lived in California, and the absence of fax markings on the release. Additionally, the signatures did not match the sellers' signatures on other documents. The staff also found a crumpled release form in St. Pierre's waste basket with "Wite-out" correction fluid at the end of one of the signatures.

[¶6.]     When confronted by First Choice management about the signatures, St. Pierre first explained the lack of a fax number by claiming that she had e-mailed the document. However, St. Pierre could not produce an e-mail, and she ultimately admitted that she had replicated Pagan's and the Huffmans' signatures. She stated that Pagan had authorized her to sign the release. Nevertheless, First Choice's management believed that St. Pierre's replication of the signatures violated company policy, constituted forgery, and constituted misconduct under the Commission's rules. At First Choice's request, St. Pierre reported the incident to the Commission.

[¶7.]     Before the Commission's disciplinary proceedings were commenced, St. Pierre obtained a written statement from Pagan stating that he authorized her to sign the release on behalf of all three sellers. Pagan would, however, later concede at the hearing that he had no authority to authorize a signature on behalf of Julie Huffman. St. Pierre also obtained an after-the-fact written statement from the

Huffmans. In that statement, the Huffmans authorized Pagan to sign on their behalf and indicated the authorization pertained to past transactions.

[¶8.] In December 2007, the Commission started informal disciplinary proceedings. *See* ARSD 20:69:05:03 (allowing the Commission to conduct an informal consultation to resolve a disciplinary action without the necessity of a formal hearing). In 2008, St. Pierre executed an "assurance of voluntary compliance" agreement with the Commission to resolve the matter. *See* ARSD 20:69:05:04 (providing that the Commission may accept an assurance of voluntary compliance to resolve a disciplinary action). Under the agreement, St. Pierre agreed to complete education courses, pay a penalty of $1,000, and reimburse the Commission's costs of $1,508.75. Because St. Pierre did not fulfill the education conditions of the voluntary compliance agreement, the Commission initiated formal disciplinary proceedings in 2010. The complaint described the incident and alleged that St. Pierre acted dishonestly within the meaning of SDCL 36-21A-71(15) and fraudulently within the meaning of SDCL 36-21A-71(32) by "sign[ing] on behalf of all three sellers without their prior written authorization so that she would receive her commission for this transaction."

[¶9.] Some testimony at the hearing focused on St. Pierre's authority to sign the release on behalf of the sellers. St. Pierre testified that she understood she had oral authority from Pagan to sign all three names. Pagan testified that St. Pierre called him and asked him to sign the release form. Pagan, however, had been at First Choice two times to sign documents that day, and he was across town when St. Pierre called. The evidence reflects that Pagan was frustrated at signing so

many documents, he thought the release was unnecessary, and he would not go back to sign the release himself. Pagan told St. Pierre to "do whatever you got to do, sign the thing and we're done." Pagan testified that he had an "expectation" that St. Pierre would also sign the Huffmans' names on the release. Pagan, however, admitted that he did not have authority to authorize St. Pierre to sign Julie Huffman's signature.

[¶10.] The evidence at the hearing also focused on St. Pierre's candor in dealing with First Choice about the signatures. St. Pierre admitted that she did not sign her name as an agent of Pagan and the Huffmans because she knew the company policy prohibited her from signing as an agent. She also testified that she anticipated if she had disclosed she signed the sellers' names, the managing broker at First Choice would have thought that she violated company policy. When asked whether she believed that she was dishonest in any way, St. Pierre testified: "I guess I was – I felt dishonest to [the managing broker]." When asked whether she "tried to deceive" First Choice's compliance staff, St. Pierre stated: "I wouldn't say I tried to deceive her, I guess. I wouldn't put it that way." St. Pierre was then asked: "Well, you wouldn't? Did you tell her that you had signed it?" St. Pierre responded: "I didn't intentionally deceive her. I don't know. No, I did not tell her I signed it."

[¶11.] The Commission found that St. Pierre did not violate SDCL 36-21A-71(32) by committing fraud or forgery with respect to obtaining the signatures. The Commission did, however, find that St. Pierre violated SDCL 36-21A-71(15) by being dishonest with First Choice about the source of the signatures. The Commission found that St. Pierre "intended to deceive or mislead the compliance

personnel into thinking that the Huffman[s] and Pagan had signed the document." The Commission further found that St. Pierre "made the choice to be dishonest and represent her signature as the Huffman[s'] and Pagan's even though she knew this was not allowed. She was not forthright in saying she was signing for [the Huffmans and Pagan] or that she had their permission to sign." The Commission suspended St. Pierre's license, but held the suspension in abeyance for six months. The Commission allowed St. Pierre to avoid the suspension on condition that she complete certain education courses, reimburse the Commission's attorney's fees of $8,047.99, and pay a $1,000 penalty.

[¶12.] The circuit court reversed the Commission's decision. The court concluded that the Commission failed to present clear and convincing evidence that St. Pierre committed acts rising to the level of dishonesty.[2]

[¶13.] We consider the following two issues raised by the Commission in this appeal:

---

2. The circuit court explained that the Commission's findings "fail[ed] to acknowledge the undisputed fact that St. Pierre had prior permission from Pagan to sign his and the Huffmans' names to the release document." Therefore, the court found the Commission's findings that St. Pierre *forged* signatures clearly erroneous. We need not review this part of the circuit court's analysis. Although the word forgery was used twice in the administrative decision, the Commission adopted the hearing examiner's recommendation that St. Pierre engaged in no unprofessional conduct within the meaning of SDCL 36-21A-71(32) ("Committing any act constituting or demonstrating . . . fraudulent dealings[.]"). Moreover, the Commission's decision was not predicated on a finding of forgery or fraud in obtaining the signatures. The Commission's decision was based on St. Pierre's representations to First Choice about the source of the signatures. Therefore, we only consider the sufficiency of the evidence to establish dishonesty by deceiving First Choice under SDCL 36-21A-71(15). Questions regarding forgery or fraud in obtaining the signatures under SDCL 36-21A-71(32) are irrelevant in this appeal.

1.    Whether St. Pierre engaged in unprofessional conduct (dishonesty) within the meaning of SDCL 36-21A-71(15).

2.    Whether the Commission had authority to order St. Pierre to reimburse the Commission for its attorney's fees and pay a $1,000 penalty as a condition of avoiding a suspension.

*Decision*

*Unprofessional Conduct*

[¶14.]    "We review agency decisions the same as the circuit court; there is no presumption that the circuit court's decision was correct." *Leonard v. State ex rel. S.D. Real Estate Comm'n*, 2010 S.D. 97, ¶ 8 n.*, 793 N.W.2d 19, 22 n.*. This Court must "give great weight to the findings of the agency and reverse only when those findings are clearly erroneous in light of the entire record." *Williams v. S.D. Dep't of Agric.*, 2010 S.D. 19, ¶ 5, 779 N.W.2d 397, 400. However, in this case there is no factual dispute as to what occurred. The dispute is whether St. Pierre's conduct constituted unprofessional conduct within the meaning of SDCL 36-21A-71(15). In this case, that is a mixed question of law and fact. We have reviewed such questions de novo. *Leonard*, 2010 S.D. 97, ¶¶ 7, 8 n.*, 793 N.W.2d at 21, 22 n.*.

[¶15.]    The Commission may revoke a real estate license "upon proof of unprofessional conduct on the part of the licensee." SDCL 36-21A-68. Unprofessional conduct includes "conduct which constitutes dishonesty . . . , whether arising within or without the pursuit of the licensee's license privilege." SDCL 36-21A-71(15). Because this matter involved the potential revocation of a professional license, the Commission was required to prove dishonesty by clear and convincing evidence. *See In re Tinklenberg*, 2006 S.D. 52, ¶ 11, 716 N.W.2d 798, 802.

[¶16.] The Commission argues that St. Pierre was dishonest because she initially failed to disclose to First Choice that she signed the sellers' names in violation of company policy. The Commission also argues that St. Pierre acted dishonestly by attempting to cover up the fact that she signed the release. St. Pierre responds that the Commission failed to plead that St. Pierre acted dishonestly in her dealings with First Choice.

[¶17.] ARSD 20:69:05:06 provides that the Commission's "complaint shall contain the name of the . . . licensee complained against, the name and address of the person making the complaint, [and] the details of the conduct complained against . . . ." This rule is in accord with notice pleading under which "a complaint need only contain '[a] short and plain statement of the claim showing that the pleader is entitled to relief[.]'" *Gruhlke v. Sioux Empire Fed. Credit Union, Inc.*, 2008 S.D. 89, ¶ 17, 756 N.W.2d 399, 409 (quoting SDCL 15-6-8(a)(1)). This contemplates a "statement of circumstances, occurrences, and events in support of the claim presented." *Id.*

[¶18.] We recently considered the argument that a complaint in a disciplinary proceeding did not afford "sufficient notice of the specific charges or allegations." *In re Fuller*, 2011 S.D. 22, ¶ 32, 798 N.W.2d 408, 415. Like the case we consider today, that respondent contended that "any allegation or evidence not specifically set forth in the body of the complaint could not be used by the Commission." *Id.* ¶ 33. We rejected that contention. We concluded that a complaint must merely "enable[] a person of common understanding to know what is intended from the language contained and . . . apprise[] a [respondent] with

reasonable certainty of the accusation against him so that he may prepare his defense." *Id.* ¶ 34.

[¶19.] The Commission's complaint in this case alleged that pursuant to company policy, St. Pierre was required to obtain a release signed by all three sellers. It further alleged that she did not have prior written authorization to sign on behalf of any of the sellers, and St. Pierre signed on their behalf so she could obtain her commission from First Choice. The complaint finally alleged that St. Pierre's conduct violated SDCL 36-21A-71(15), which prohibits acts involving dishonesty whether arising within or without the pursuit of the licensee's license privilege. We conclude that pleading that St. Pierre signed the names without prior written authorization *so she could obtain her commission from First Choice* was sufficient notice of conduct supporting the Commission's claim that she was dishonest in dealing with First Choice.

[¶20.] Furthermore, under notice pleading, "a case consists not in the pleadings, but the evidence, for which the pleadings furnish the basis. Cases are generally to be tried on the proofs rather than the pleadings." *Sazama v. State ex rel. Muilenberg*, 2007 S.D. 17, ¶ 13, 729 N.W.2d 335, 341. In this case, the parties actually litigated the Commission's ultimate finding that St. Pierre's acts involved dishonesty (deception) with respect to First Choice. The Commission's evidence included: First Choice's policy prohibiting broker associates from signing on behalf of a seller; St. Pierre's knowledge of the policy; St. Pierre's unhappiness with having to obtain the sellers' signatures on the release; St. Pierre's initial failure to disclose that she had replicated the sellers' names on the release; and evidence indicating

that St. Pierre replicated the sellers' names with the intention of making compliance staff think the sellers' had personally signed the release. At the time this evidence was offered, St. Pierre did not contend this evidence was outside the scope of the pleadings. Therefore, the claim of dishonesty involving First Choice was tried by implied consent of the parties. The test for trial of issues by implied consent "is whether the opposing party will be prejudiced by the implied amendment, i.e., did he have a fair opportunity to litigate the issue, and could he have offered any additional evidence if the case had been tried on the different issue." *W. Petroleum Co. v. First Bank Aberdeen (N.A.)*, 367 N.W.2d 773, 775 (S.D. 1985). This record reflects that St. Pierre "received fair notice of what [she] was facing and was not misled or prevented from preparing an adequate defense." *See In re Discipline of Russell*, 2011 S.D. 17, ¶ 36, 797 N.W.2d 77, 86, *cert. denied, ___ U.S. ___*, 132 S. Ct. 250, 181 L. Ed. 2d 144 (2011).

[¶21.]	For the foregoing reasons, we reject St. Pierre's attempt to reframe the issue on appeal. As St. Pierre sees it, the only issue is "whether a forgery or any violation of the law occurred in this case and whether the law requires written authority under these circumstances." But the issues litigated included both fraud in signing the sellers' names and dishonesty in representing the nature of the signatures to First Choice. Although the Commission exonerated St. Pierre of fraud with respect to signing the sellers' names, the Commission found that St. Pierre attempted to give a false impression to First Choice that the sellers had actually signed the release. Therefore, the issue on appeal is not whether St. Pierre's replication of Pagan's and the Huffmans' names was unauthorized, fraudulent, or a

forgery. The issue is whether St. Pierre's representations to First Choice constituted dishonesty within the meaning of SDCL 36-21A-71(15).

[¶22.]     Statutes are "to be understood in their ordinary sense." SDCL 2-14-1. Dishonesty is defined as a "want of fairness and straightforwardness" and "a disposition to defraud, deceive, or betray." *Webster's New International* 748 (2d ed. 1954). Deceit includes the "act of intentionally giving a false impression." *Black's Law Dictionary* 465 (9th ed. 2009).

[¶23.]     The record reflects that St. Pierre was not straightforward and acted with intent to give a false impression to First Choice regarding the source of the sellers' signatures. There is no dispute that St. Pierre was aware of First Choice's policy prohibiting its broker associates from signing on behalf of a party to a real estate transaction. The record further reflects that because St. Pierre was aware of the policy and anticipated the signature problem, she initially failed to disclose that she had signed the release on behalf of the sellers. St. Pierre even attempted to affirmatively mislead First Choice about the matter. She replicated the sellers' names from other documents to make them look like original signatures. She used correction fluid to cover up her act. And she attempted to explain the absence of fax markings by falsely claiming that the release had been e-mailed. Ultimately, St. Pierre admitted she was dishonest in dealing with the managing broker, and the fact finder could have inferred she admitted dishonesty in dealing with the compliance staff. *See supra* ¶ 10. A party "cannot . . . assert a better version of the facts than [her] prior testimony and 'cannot . . . claim a material issue of fact which assumes a conclusion contrary to [her] own testimony.'" *Loewen v. Hyman*

*Freightways, Inc.*, 1997 S.D. 2, ¶ 16, 557 N.W.2d 764, 768 (citing *Petersen v. Dacy*, 1996 S.D. 72, ¶ 16, 550 N.W.2d 91, 95 (quoting *Lalley v. Safway Steel Scaffolds, Inc.*, 364 N.W.2d 139, 141 (S.D. 1985))). We conclude that the Commission did not err in finding that St. Pierre acted dishonestly in her dealings with First Choice in violation of SDCL 36-21A-71(15).

[¶24.] St. Pierre, however, argues that her misconduct only involved the failure to self-report a violation of an internal company policy. St. Pierre contends that when an internal company policy has been violated, SDCL ch. 36-21A provides a "more direct route" for discipline. *See* SDCL 36-21A-45 (providing that a broker associate's license becomes inactive if association with real estate broker or licensed firm ceases); SDCL 36-21A-58 (precluding an inactive licensee from practicing unless the licensee associates with another responsible broker).

[¶25.] We conclude that St. Pierre's suggested alternative discipline does not preclude Commission discipline under SDCL 36-21A-68 and 36-21A-71(15). St. Pierre's conduct involved a violation of a First Choice policy *and* SDCL 36-21A-71(15). Because St. Pierre's conduct involved a violation of SDCL 36-21A-71(15), the Commission was authorized to impose discipline under SDCL 36-21A-68 in addition to any action a responsible broker might take under SDCL ch. 36-21A.

*Attorney's Fees and Costs*

[¶26.] The Commission, as a condition of withholding the suspension of St. Pierre's license, ordered reimbursement of the Commission's attorney's fees incurred in the disciplinary proceeding. The Commission argues that it is authorized to recover its attorney's fees in disciplinary proceedings against real

estate licensees. The circuit court did not consider this issue because it concluded that no discipline was warranted.

[¶27.] SDCL 1-26-29.1 delineates the power of administrative agencies to recover their expenses in disciplinary matters. The statute provides that after "conducting a contested case proceeding that results in discipline . . . of a licensee, suspension or revocation of a licensee's license," the Commission may assess part or all of its "actual expenses" against the licensee. *Id.* The Commission argues that attorney's fees are recoverable "expenses" within the meaning of this statute. We disagree.

[¶28.] "Ordinarily[,] the terms 'costs' and 'expenses' as used in a statute are not understood to include attorney's fees . . . ." *Tracy v. T & B Const. Co.*, 85 S.D. 337, 340, 182 N.W.2d 320, 322 (1970).[3] "At common law[,] the right to recover attorney's fees from an opponent in litigation did not exist. In the absence of a statute or rule of court or some agreement expressly authorizing taxing of attorney's fees in addition to ordinary statutory costs, such an item of expense is not allowable." *Id.* We acknowledge the Commission's point that these common-law rules arose in a case considering a court's authority to assess attorney's fees as

---

3. In affirming an award of attorney's fees, *Tracy* relied on SDCL 15-17-7 (1970) (providing that a "court may allow attorneys' fees as costs for or against any party to an action only in the cases where the same is specifically provided by statute") and SDCL 58-12-3 (allowing "the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs" in an action against an insurance company for refusal to pay an insured's loss). 85 S.D. 337, 182 N.W.2d 320. Although SDCL 15-17-7 was repealed and replaced in 1992 by SDCL 15-17-38 (providing that "attorneys' fees may be taxed as disbursements if allowed by specific statute"), the amendment does not affect the *Tracy* analysis.

expenses or costs in civil court actions. But we think these rules are even more applicable to an administrative agency because unlike a court exercising its constitutional powers, an administrative agency's existence and powers are derived solely from the Legislature. Because an express statute, rule, or agreement is required to award attorney's fees even when courts are exercising their inherent adjudicative authority under the Constitution, we see no reason why equally clear legislation would be unnecessary for administrative agencies whose authority arises only from the Legislature.

[¶29.] The Commission cites *Leonard*, 2010 S.D. 97, 793 N.W.2d 19, for the proposition that this Court has allowed the Commission to recover attorney's fees as expenses. The Commission's reliance on *Leonard* is misplaced. In *Leonard*, a real estate licensee objected to an assessment of attorney's fees. That licensee did not, however, contend that attorney's fees were not awardable as expenses under SDCL 1-26-29.1. The licensee only challenged the method of apportioning attorney's fees among the parties. Therefore, we were not asked, and we did not decide, whether absent a specific statute, attorney's fees are a recoverable expense against an unwilling licensee.

[¶30.] The Commission's reliance on *Olesen v. Snyder*, 277 N.W.2d 729 (S.D. 1979), and *Brooks v. Milbank Insurance Co.*, 2000 S.D. 16, 605 N.W.2d 173, is also misplaced. Both cases dealt with the power of a court to grant continuances "upon such terms as the court may impose" under SDCL 15-11-10.[4] Therefore, those cases

---

4. SDCL 15-11-10 provides: "Every continuance or postponement granted upon application shall be upon such terms as the court may impose."

#26112

have no application to the power of an administrative agency to recover its attorney's fees under SDCL 1-26-29.1 as expenses following a disciplinary proceeding.

[¶31.] The Commission argues that attorney's fees should be recoverable expenses because they are recoverable in attorney discipline cases under SDCL 16-19-70.2. But unlike SDCL 1-26-29.1, the attorney discipline rule (SDCL 16-19-70.2) specifically authorizes the recovery of attorney's fees in attorney discipline proceedings.[5] While the Legislature explicitly authorized recovery of attorney's fees in SDCL 16-19-70.2, the absence of such authorization in SDCL 1-26-29.1 illustrates that the Commission has not been given the explicit authority necessary to recover attorney's fees in its disciplinary proceedings. *See Schrader v. Tjarks*, 522 N.W.2d 205, 213 (S.D. 1994) ("Had the legislature intended to include these expenses they would have said so, as they did with [other items].").

[¶32.] The Commission finally argues that St. Pierre's discipline did not include an affirmative order to pay attorney's fees. The Commission contends that the repayment of its attorney's fees is a voluntary act that St. Pierre may choose to do in order to avoid discipline; i.e., the suspension of her license. We do not, however, see a difference between discipline including an affirmative order requiring the repayment of attorney's fees and discipline including a conditional order requiring repayment in order to avoid more serious discipline. In either case,

---

5. SDCL 16-19-70.2 provides in part that "[e]xpenses incurred by the Disciplinary Board of the State Bar . . . may be assessed . . . to cover the costs of . . . disciplinary counsel's . . . hourly charges for investigation and preparation for hearings, trials, and appeals, and appearances at hearings, trials and appeals . . . ."

the Commission is attempting to recover its attorney's fees as a part of an administrative proceeding involving the "discipline . . . of a licensee." *See* SDCL 1-26-29.1. Because the Legislature has not explicitly authorized the recovery of attorney's fees in licensee discipline proceedings, the Commission was without authority to conditionally order the repayment of those expenses as a part of its discipline.

[¶33.] The Commission also required St. Pierre to pay a $1,000 penalty as a condition of withholding the suspension. St. Pierre argues that the Commission could not order that penalty because she previously paid a $1,000 penalty when she entered into the assurance of voluntary agreement in the informal proceeding. St. Pierre contends that SDCL 36-21A-68 and due process do not permit the assessment of a second penalty.

[¶34.] SDCL 36-21A-68 authorizes penalties in licensee discipline cases "not to exceed two thousand five hundred dollars." Therefore, even if St. Pierre's voluntary assurance of compliance agreement and the formal disciplinary proceeding were considered one proceeding – a question we need not decide – all penalties combined did not exceed the amount authorized in any single disciplinary proceeding. St. Pierre provides no authority that the penalty imposed constituted double punishment or a violation of due process.

[¶35.] Reversed and remanded for reinstatement of all terms of the Commission's discipline except the conditional provision requiring the repayment of attorney's fees.

#26112

[¶36.]    GILBERTSON, Chief Justice, and SEVERSON and WILBUR, Justices, and LONG, Circuit Court Judge, concur.

[¶37.]    LONG, Circuit Court Judge, sitting for KONENKAMP, Justice, disqualified.