Theresa **HUCK**, f/k/a Theresa Knoll,
Charging Party and Appellant,

v.

**McCAIN FOODS**, Appellee.

Nos. 17388, 17401.

Supreme Court of South Dakota.

Argued Oct. 21, 1991.

Decided Dec. 31, 1991.

Rehearing Denied Feb. 6, 1992.

Richard L. Johnson, Sioux Falls, for charging party and appellant.

Arthur M. Hopper of Austin, Hinderaker, Hackett & Hopper, Watertown, for appellee.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

On March 20, 1989, appellant Theresa Huck (Huck) filed a complaint with the South Dakota Division of Human Rights alleging appellee McCain Foods engaged in unfair or discriminatory practices because of sex, in violation of SDCL 20–13–10.\* A hearing was held before the Commission of Human Rights (Commission) on October 20,

---

\* SDCL 20–13–10. **Employer's unfair or discriminatory practices.**

It is an unfair or discriminatory practice for any person, because of race, color, creed, religion, sex, ancestry, disability or national origin, to fail or refuse to hire, to discharge an employ-

ee, or to accord adverse or unequal treatment to any person or employee with respect to application, hiring, training, apprenticeship, tenure, promotion, upgrading, compensation, layoff or any term or condition of employment.

1989. Commission dismissed the complaint.

Huck appealed Commission's decision to the circuit court. The circuit court entered a judgment affirming Commission's dismissal of the complaint based on Huck's failure to prove that McCain Foods knew or should have known of the harassment and failed to take proper remedial action. Huck now appeals and presents the following issue:

Did McCain Foods know or should it have known of the alleged sexual harassment of Huck and did it fail to take proper remedial action?

By Notice of Review, McCain Foods raises the following issue:

Was Huck subject to unwelcome harassment, and was said alleged harassment based on sex?

We affirm the trial court. Having disposed of this appeal on the merits, we decline to address McCain Foods' Notice of Review.

## FACTS

Theresa Huck, a former employee of a predecessor company to McCain Foods, was rehired by McCain Foods in June of 1988. She became a full-time employee working the third shift. Shortly thereafter, Huck voluntarily began a personal relationship with Richard Anderson (Anderson), her shift supervisor. In the course of this relationship, consensual sexual relations occurred on at least one occasion. During this time, Anderson gave Huck preferential treatment over other employees. In this scenario, Huck did voluntarily abide. In a word, they were lovers. Anderson continued to make sexual innuendoes to Huck both on and off the job through October of 1988.

In August of 1988, the love relationship between Huck and Anderson ended. Nevertheless, Anderson continued to treat Huck well in the work place and, in fact, recommended her for a promotion in late August, 1988. Management approved this promotion to "packaging operator."

Circa this time, Huck began seeing another employee; first on a casual basis, then on a more personal level. As Anderson became aware of this, his attitude toward Huck changed. From September 1988, into March of 1989, Anderson's and Huck's working relationship may be described as poor. Anderson began to watch Huck's work performance more closely. He repeatedly criticized her work performance, and treated her less favorably than other employees. Other employees, relatives and close friends of Anderson, joined in the harassment. These employees repeatedly altered Huck's equipment without her knowledge, directed abusive comments toward her, and generally ignored her. This abuse was reported to Anderson to no avail. Additionally, in March of 1989, Anderson verbally warned Huck for abusing break time. Huck refused to sign a warning slip proffered by Anderson. The bloom of love had entirely faded and a mutual rancor prevailed. For the first time, department head David Musser and plant manager Donovan Weigel became involved in the conflict. These men discussed "break time use" only with the parties.

On March 20, 1989, Huck filed a complaint with the South Dakota Division of Human Rights charging sexual harassment on the job by Anderson. There was no mention of the prior sexual relationship between Anderson and Huck and an apparent retaliation in the complaint. Weigel then investigated the situation more thoroughly. However, he did not become aware of the prior sexual relationship between Huck and Anderson.

The harassment, scrutiny and criticism by Anderson, his relatives and friends, continued after the filing of the sexual harassment complaint. In May of 1989, Huck lodged a complaint with Weigel charging that Anderson had shoved her through a door at the plant. Weigel and Musser called a meeting of the entire third shift. Though they received mixed opinions from the crew as to the reason for the parties' conflict, no mention of the prior sexual relationship was mentioned. Subsequent to this meeting, Huck was moved to the

first shift for two weeks. At the end of this time, Weigel and Musser offered Huck a full-time, first-shift job, though different from her current position, because that position was filled. Huck refused and volunteered to go back to third shift. Thereupon, Weigel and Musser transferred Anderson to another shift.

Upon return to the third shift, Huck continued to have problems with Anderson's relatives and friends. Following two incidents, Huck requested and received a two-week leave of absence from Weigel and Musser. Three days before the end of the leave of absence, at a meeting between the three, Huck requested of Weigel and Musser that it be extended. After consulting with the company's home office, observing that Huck's appearance and condition had improved, and realizing that Huck would not have to work with Anderson, the leave of absence was denied.

During this meeting, Weigel informed Huck that Anderson would not be her supervisor. Huck learned that Anderson had been fired for having sexual relations with an hourly employee. Weigel first became aware of this sexual relationship on May 24, 1989, as a result of the investigation of the Division of Human Rights into Huck's sexual harassment claim.

The weekend following this meeting, various non-employees of McCain Foods harassed and threatened Huck at her home. Huck did not return to work following this weekend, after her leave of absence, as she agreed to and expected. Huck did not inform anyone at McCain Foods that she was not returning to work, nor the reasons why. Company policy provided that failure to return to work after a leave of absence would be considered a voluntary termination by the employee. Huck was aware of this. Her employment with McCain Foods thereby ended.

## DECISION

■ The standard of review for administrative decisions in South Dakota is firmly established. This Court will overrule an agency's findings of fact only when they are clearly erroneous. However, conclu-

sions of law are given no deference by this Court on appeal and are freely reviewable. *Tiensvold v. Universal Transport, Inc.,* 464 N.W.2d 820, 822 (S.D.1991); *Permann v. Dept. of Labor,* 411 N.W.2d 113, 115–17 (S.D.1987). If an issue is a mixed law-fact question, we have previously held that we will treat it as a question of law and freely review the issue. *Permann,* 411 N.W.2d at 119.

*Huck asserts that the Commission erred in not finding that McCain Foods knew or should have known of the sexual harassment of Huck and failed to take proper remedial action.* We do not agree.

■ Huck has charged that her supervisor, Anderson, had sexually harassed her in violation of SDCL 20–13–10. In *Tombollo v. Dunn,* 342 N.W.2d 23, 25 (S.D.1984), this Court indicated that sexual harassment could constitute a violation of SDCL 20–13–10. In light of recent cases from the Eighth Circuit Court of Appeals and the United States Supreme Court, we now expressly acknowledge that principle. We note additionally that SDCL 20–13–10 is comparable to the corresponding provision in Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq., which was interpreted by the federal courts to include sexual harassment charges.

The Court in *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49, 58–59 (1986) stated that sexual discrimination, which creates a hostile or abusive work environment by harassment, arises when sexual conduct "... has the purpose or effect of unreasonably interfering with an individual's work performance or by creating an intimidating, hostile or offensive working environment." *Meritor* involved harassment by a supervisor towards an employee. Commission found, and the trial court affirmed, that this type of harassment case was present here.

In *Hall v. Gus Const. Co., Inc.,* 842 F.2d 1010, 1013 (8th Cir.1988) (Wollman, J.), the court established the test plaintiff must meet to prevail on a sexual harassment

claim. To prevail, a plaintiff must show that:

> (1) she belongs to a protected group, (2) she was subject to unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment affected a 'term, condition or privilege' of employment, and (5) the employer knew or should have known of the harassment in question and failed to take proper remedial action.

*Id.* at 1013 (quoting *Moylan v. Maries County,* 792 F.2d 746, 749 (8th Cir.1986)) (citations omitted).

In the present case, Commission found, and the trial court affirmed, that Huck had met her burden of proof and established the first four elements.

■ The predicate acts underlying a sexual harassment claim do not need to be clearly sexual in nature. The offensive conduct is not required to consist of explicit sexual overtones. *Hall,* 842 F.2d at 1014. *See, Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir.1987) (evidence of threats of physical violence and incidents of verbal abuse properly considered); *McKinney v. Dole,* 765 F.2d 1129, 1139 (D.C.Cir. 1985) (acts of physical aggression properly considered). The court in *Hall* adopted the rationale from the *McKinney* decision. This provided that sexual harassment includes, " 'any harassment or unequal treatment of an employee ... that would not occur but for the sex of the employee, if sufficiently patterned or pervasive.' " *Hall,* 842 F.2d at 1014 (quoting *McKinney,* 765 F.2d at 1138). In the instant case, Commission found that this type of unwelcome sexual harassment was present.

Commission determined that Huck had failed to establish the fifth element of a sexual harassment claim—that McCain Foods knew or should have known of the harassment in question and failed to take proper remedial action. We agree with this determination. As this question is a mixed question of law and fact, we treat it as a question of law and freely review the issue. *Permann,* 411 N.W.2d at 119.

■ The United States Supreme Court in *Meritor* discussed employer liability at length but declined to set a standard. The *Meritor* court stated that Congress (in passing 42 U.S.C. 2000e et seq.) wanted courts to look to agency principles for guidance in this area. *Meritor,* 477 U.S. at 72, 106 S.Ct. at 2408. *Meritor* also intimated that employers should not be held strictly liable for the acts of their supervisors. Nevertheless, "absence of notice to an employer does not necessarily insulate that employer from liability." *Id.* at 72, 106 S.Ct. at 2408. Indeed, the Eighth Circuit in *Hall,* 842 F.2d at 1016, determined that actual or constructive notice of harassment and failure to take remedial steps to end it is the standard for employer liability. We believe this to be the proper standard.

■ From a review of the record, we cannot say that McCain Foods knew or should have known of the harassment in question and failed to take proper remedial action. McCain Foods had neither actual knowledge nor the possibility of constructive knowledge of the harassment. Musser and Weigel represented the level of management most closely involved with the employees. The record shows that Musser and Weigel took action to attempt to resolve the apparent personality conflict before they were aware of its cause. This included an investigation after receipt of the Human Rights complaint in March; several meetings with third-shift employees; transfer of Huck to another shift; offering Huck another position on another shift; and transferring Anderson to another shift when Huck returned to the original shift. Despite a thorough investigation, and these attempts at resolution of the conflict, management neither became aware of the harassment nor had opportunity to become aware of it. Neither Huck nor Anderson or any other employee shed light on the harassment. *Once management did become aware of the sexual harassment, a number of remedial steps were implemented.* Reaching this conclusion, based upon the facts, we anchor our decision. These steps included termination of Anderson as an employee, granting Huck a leave of absence, and informing

Huck's new shift supervisor of the situation. This was sufficient and proper remedial action on the part of McCain Foods.

■ McCain Foods cannot be held liable based upon constructive knowledge of Anderson, a plant supervisor. It is evident from the record that Anderson was not a management-level employee. His authority was quite limited. Musser and Weigel, production and plant managers, respectively, were the nearest level of management in the plant and Musser was Anderson's supervisor. Anderson had no control over hiring, firing or disciplining employees.

Additionally, we note that McCain Foods has a grievance procedure and a policy of nondiscrimination, including sex discrimination, with rules of conduct essentially covering sexual harassment. The United States Supreme Court in *Meritor*, 477 U.S. at 72–73, 106 S.Ct. at 2408, stated that while not necessarily dispositive (because of the relevant facts) the existence of such factors is, at least, "plainly relevant." McCain Foods' discrimination policy and grievance policy encompassed far more than the facts in *Meritor*. Huck was aware of the grievance procedure and the company policy against sex discrimination of any form. This grievance procedure was accessible to all employees. Huck did not use this procedure.

We agree with Commission that Huck failed to establish that McCain Foods had knowledge or reason to know of the sexual harassment or failed to take remedial steps. Therefore, McCain Foods has not violated SDCL 20–13–10.

Affirmed.

MILLER, C.J., and WUEST, SABERS and AMUNDSON, JJ., concur.