**Marilyn MONTGOMERY, Plaintiff
and Appellee,**

v.

**BIG THUNDER GOLD MINE, INC.,
a South Dakota Corporation,
Defendant,**

**and**

**James Hersrud, Defendant and Appellant.**

**No. 18609.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 17, 1994.

Decided May 17, 1995.

Jerry D. Johnson of Banks, Johnson & Colbath Rapid City, for plaintiff and appellee.

Robert L. Varilek, Rapid City, for defendant and appellant.

KONENKAMP, Justice.

An employer challenges the circuit court's jurisdiction to hear a sexual harassment case brought by a former employee before administrative remedies were exhausted. We reverse.

### FACTS

In 1985, Marilyn Montgomery began dating James Hersrud, the sole shareholder and director of Big Thunder Gold Mine, Inc., a South Dakota corporation which offers tours of a gold mine in the Black Hills. After Montgomery and her children moved into his residence, she worked for him as a tour guide and then a business manager. Big Thunder needed money for capital improvements in 1987, so Montgomery, using an advance against her inheritance, purchased stock and was named as a director. She then owned forty-four percent of the corporation and Hersrud owned the remainder.

When the couple's relationship turned sour in 1991, Montgomery continued to live at Hersrud's business-owned residence, but moved into her daughter's bedroom. Hersrud demanded that she move back into his bedroom or be fired. She refused. He moved out and then demanded that she pay $6,000 in back rent for the residence and the corporate car. At a shareholders meeting on February 25, 1992, Hersrud used his majority ownership to create a third seat on Big Thunder's board of directors and named his father to it. Then Hersrud and his father voted to fire Montgomery as manager, expel her from the residence, and take away her corporate car. She remained a minority shareholder, but Hersrud and his father continued to make other decisions designed to decrease shareholder dividends.

Montgomery filed suit in circuit court against Big Thunder for wrongful termination and against Hersrud personally for sexual harassment. She further sought dissolution of the corporation. At no time did she ever file a charge with the South Dakota Division of Human Rights (Division). Hersrud moved for summary judgment on the sexual harassment claim because Montgomery had not exhausted her administrative remedies with the Division. The trial court denied the motion reasoning that the matter could eventually be brought in circuit court even if she had first filed a charge with the

Division. At trial the jury awarded Montgomery $25,000 for the sexual harassment claim. She prevailed on her other claims as well. Hersrud appeals the denial of summary judgment based upon Montgomery's failure to exhaust her administrative remedies.

### DECISION

■ In *Tombollo v. Dunn*, 342 N.W.2d 23, 25 (S.D.1984), and *Huck v. McCain Foods*, 479 N.W.2d 167 (S.D.1991), we equated sexual harassment with sexual discrimination. We have also held that harassment claims must first be filed with the South Dakota Division of Human Rights in order to exhaust administrative remedies. *Weller v. Spring Creek Resort, Inc.*, 477 N.W.2d 839, 840 (S.D.1991); SDCL 20–13–46. According to SDCL 20–13–29:

> Any person claiming to be aggrieved by a discriminatory or unfair practice may file with the division of human rights a verified, written charge which shall state the name and address of the person or agency alleged to have committed the discriminatory or unfair practice. The charge shall set forth the facts upon which it is based, and shall contain any other information required by the division. The commission of human rights, a commissioner, a state's attorney or the attorney general may file a charge.

Montgomery argues that use of the permissive word "may" in the first sentence indicates the Legislature did not intend that if a person had a discrimination case it had to be filed with the Division. We interpret this language to mean that a discrimination victim is not required to file a charge at all. It does not propose that a person may file either with the Division or in circuit court.

In 1991, the Legislature created an exception to the "exhaustion of administrative remedies" rule when it enacted SDCL 20–13–35.1:

> No later than twenty days after the issuance of notice requiring the respondent to answer the charge, the charging party or respondent may elect to have the claims asserted in the charge decided in a civil action, in lieu of a hearing, under the pro-

visions of this section. *Upon receipt of notice of election, the division of human rights or the commission of human rights has no further jurisdiction over the parties concerning the charge filed....* [Emphasis added.]

Thus when a person files a charge alleging a discriminatory or unfair practice, the parties need not carry the administrative process to completion before starting a civil action. Yet Montgomery suggests that the statute effectively allows her to bypass the administrative process altogether. A plain reading of the statute disposes of her argument. Once a charge is filed with the Division pursuant to SDCL 20–13–29, the Division loses jurisdiction only when notified that the party has elected to file a civil action. SDCL 20–13–35.1. Consequently, a charge must first be filed with the Division and then by notice of election a party can stop the administrative process and proceed to circuit court.

■ Montgomery next argues that we should apply the exception to the exhaustion of remedies rule recognized in *Johnson v. Kolman*, 412 N.W.2d 109 (S.D.1987). This Court stated in that case, "It is well settled that exhaustion is not required when the administrative remedies are inadequate." *Id.* at 112. We also noted, however, that the only dispute in that case cognizable by the administrative agency was the issue of unemployment benefits, which was not raised in the civil action. Here the sexual discrimination claim brought in Montgomery's suit was plainly cognizable by the Division. *Tombollo v. Dunn, supra.* The fact that she sought compensation for pain and suffering and punitive damages, which the Division cannot award, will not render her remedies inadequate, because she still has the option to take her case to circuit court to seek those damages, but only after first bringing her charge before the Division. Hence, the "inadequate remedy" exception will not apply.

■ Though the trial court's reasoning may have been pragmatic, it nonetheless allowed a party to bypass a legislatively mandated administrative process. For the Division to achieve its human rights objectives, it must receive all sexual harassment com-

plaints before such claims enter the judicial process. *See* SDCL 20–13–7.* Montgomery never filed a charge with the Division, so the trial court was without jurisdiction to hear the issue. As a matter of law, Hersrud was entitled to summary judgment. *Werner v. Norwest Bank,* 499 N.W.2d 138 (S.D.1993); *Hurney v. Locke,* 308 N.W.2d 764, 767 (S.D. 1981). That portion of the judgment against Hersrud for sexual harassment is

Reversed.

MILLER, C.J., AMUNDSON, J., and WUEST, Retired Justice, concur.

SABERS, J., dissents.

GILBERTSON, J., not having been a member of the Court at the time this case was considered, did not participate.

SABERS, Justice (dissenting).

The trial court entered judgments based in part on jury verdicts in favor of Montgomery and against the Defendant and his corporation for wrongful termination of $26,500; sexual harassment of $25,000, and for dissolution of the corporation. I would affirm the trial court.

The majority opinion reverses the trial court principally for the reason that under SDCL 20–13–7 the Division must allegedly receive all sexual harassment complaints before such claims enter the judicial process, otherwise the Division cannot achieve its human rights objectives. What would prohibit the Division from dealing with the matter during or after the lawsuit? At any rate, this reason is insufficient to reverse this case under these circumstances.

The exhaustion of remedies rule does not apply where an administrative agency cannot fashion an adequate remedy with respect to the claim in issue. Here, the administrative remedies available to Montgomery were inadequate where the Commission was not empowered to award her compensation for pain and suffering and mental anguish or award her punitive damages. Therefore, Montgom-

ery was entitled to seek relief from the circuit court.

In *Johnson v. Kolman,* 412 N.W.2d 109 (S.D.1987), the plaintiff employee sued his former employer for breach of contract, wrongful termination, breach of severance agreement, fraud, and breach of fiduciary duty.

In reversing the trial court, we remarked that "a party must exhaust all available administrative remedies *only* if the agency actually has authority to deal with the particular question raised." *Id.* at 112 (emphasis in original). In that case, the only dispute cognizable by the Department of Labor was whether or not the employee was eligible for unemployment insurance benefits. On the other hand, the employee's lawsuit did not involve the issue of unemployment compensation. Instead, it involved issues of breach of contract, wrongful termination, breach of severance agreement, fraud, and breach of fiduciary duty, all of which were claims the Department of Labor had no authority to determine. Therefore, the exhaustion doctrine could not be used to bar Johnson's suit.

In *Johnson,* we stated:

Even if part of the wrongful termination of employment issue is cognizable by the Department of Labor, the facts of the case bring it within one of the exceptions to the exhaustion doctrine. It is well settled that exhaustion is not required when the *administrative remedies are inadequate.*

*Id.* at 112 (emphasis added) (citations omitted). We went on to point out that had the employee been awarded unemployment compensation by the Department of Labor, those amounts would have been insufficient in adequately compensating the employee with respect to the claims he was asserting in his lawsuit. In other words, "an award of unemployment benefits would not provide any remedy for his claims of breach of employment contract and severance contract, fraud, and breach of fiduciary duty." * *Id.* at 113.

---

* The Legislature mandated that discrimination claims first be brought before the Division apparently to allow it to exercise its expertise in these matters and so that it can monitor and rectify discriminatory practices in South Dakota.

* The Supreme Court of Iowa has recognized the same exception in *Myers v. Caple,* 258 N.W.2d 301 (Ia.1977), and *Lakota Consol. Ind. Sch. v. Buffalo Center,* 334 N.W.2d 704 (Ia.1983).

Here, the statutory scheme provided by the legislature under SDCL ch. 20–13 does not provide adequate relief for the types of claims brought by Montgomery. More specifically, SDCL 20–13–42 (Supp.) provides that in the event the commissioner finds that the person named in the charge has engaged in a discriminatory or unfair practice, the Commission may take such affirmative action, "including hiring, reinstatement, or upgrading of employees, with or without back pay; ... [or] compensation incidental to the violation, *other than* pain and suffering, punitive, or consequential damages ..." (Emphasis added.) Here, Montgomery sued for damages for pain and suffering and mental anguish, as well as punitive damages. Since the Commission was not empowered to award her those damages, she should not be required to file with the Commission in the first instance.

I would affirm the judgment of the trial court on the basis of *Johnson,* 412 N.W.2d 109—the settled law exception to the exhaustion doctrine. In these circumstances, it makes little sense to vacate the jury verdict of $25,000 and require Montgomery to begin again at square one.