#28683-aff in pt & rev in pt-JMK
**2019 S.D. 67**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

SARA HALLBERG,                                          Plaintiff and Appellant,

     v.

SOUTH DAKOTA BOARD OF
REGENTS, JEREMY REED, and
FRANCESCA LEINWALL,
Individually,                                          Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE SCOTT P. MYREN
Judge

\* \* \* \*

ALEX M. HAGEN
MICHELLE I. STRATTON of
Cadwell, Sanford, Deibert & Garry, LLP
Sioux Falls, South Dakota                    Attorneys for plaintiff
                                             and appellant.


REED RASMUSSEN of
Siegel, Barnett & Schutz, LLP
Aberdeen, South Dakota                       Attorneys for defendants and
                                             appellees.

\* \* \* \*

ARGUED ON
APRIL 30, 2019
OPINION FILED **12/31/19**

#28683

KERN, Justice

[¶1.]      Sara Hallberg filed a complaint in circuit court against the South Dakota Board of Regents and two of its employees, alleging retaliatory discharge. The circuit court dismissed the case, holding that the court lacked jurisdiction and that the Board and its employees were shielded from the suit by sovereign immunity.  Hallberg appeals.  We affirm in part and reverse in part.

**Facts and Procedural History**

[¶2.]      We relate the following facts as alleged in Hallberg's complaint.  The Student Affairs Department at Northern State University (NSU) hired Hallberg as its Director of the Counseling Center (Center).  Her employment term ran from September 25, 2017 to June 21, 2018, with the possibility of an annual reappointment.  Hallberg's supervisors were Francesca Leinwall, the associate vice president of student affairs, and Jeremy Reed, the vice president of enrollment management and student affairs.

[¶3.]      Shortly after Hallberg began working at NSU, she noticed unlicensed student employees counseling patients and signing therapy notes which, in her view, violated the ethical standards of the American Counseling Association. Although she communicated her concerns about this practice to her supervisors and discussed it with NSU's legal counsel, both informed her that the student employees were not required to be licensed to perform their employment duties.

[¶4.]      Because she still believed the behavior was improper, Hallberg contacted other Board of Regents institutions about their protocols.  She asserted that each informed her that it did not permit counselors to practice without a

-1-

license. She also contacted the South Dakota Counselors and Marriage and Family Therapist Examiners Licensing Board. The Board told her that practicing without a license is prohibited by law.

[¶5.] Additionally, Hallberg discovered that staff members, including student employees, had access to the Center's Titanium program, a system used to store patient records and counseling notes. She likewise observed that student employees were the primary point of contact for students calling the Center to schedule counseling services. This practice allowed student employees access to their peers's student identification numbers and other sensitive information. Hallberg began restricting employee access to confidential information by assigning the primary phone line to Jobi Gramlow, a senior secretary. Gramlow did not agree with this staffing decision. Hallberg also challenged Gramlow's attempt to hire a student who was also a client of the Center.

[¶6.] At a full staff meeting of the student affairs office in December 2017, Hallberg presented her concerns regarding the Center's possible violation of the American Counseling Association's ethical standards. She discussed the option of installing a firewall in the Titanium system to restrict access to patient records. She also explained her decision to make Gramlow the primary phone contact to remedy the confidentiality issues with the front desk protocol. The following day, Hallberg received a termination letter from Leinwall for disrupting the "efficiency or morale of the [D]epartment" in violation of the Board of Regents's policy.

[¶7.] Hallberg filed suit in circuit court, naming The Board of Regents, along with Reed and Leinwell individually, as defendants. Although the provisions of

SDCL 3-16-9 appear designed to protect state employee "whistleblowers," Hallberg, in her complaint, claimed whistleblower status generally without citing the statute and alleged that her termination constituted unlawful retaliation for reporting the Center's unethical practices. She sought compensatory damages, back and front pay, damages for emotional distress and mental anguish, and punitive damages. Hallberg did not file a grievance before the Civil Service Commission (Commission) prior to filing her action in circuit court.

[¶8.]     The Board of Regents, Reed, and Leinwall moved to dismiss Hallberg's complaint for lack of jurisdiction and failure to state a claim under SDCL 15-6-12(b)(1) and (5). After a hearing on the motion, the circuit court dismissed Hallberg's complaint. In its order, it stated, "[T]he [c]ourt has determined it has no jurisdiction because [d]efendant South Dakota Board of Regents is entitled to sovereign immunity as the State of South Dakota has only waived sovereign immunity with respect to claims under SDCL 3-16-9 to the extent that it has created an administrative remedy." The court also found Leinwall and Reed protected by the doctrine of sovereign immunity because their decision to fire Hallberg was a discretionary act done within the scope of their employment.

[¶9.]     Hallberg appeals, raising two issues that we restate as follows:

1.  Whether the circuit court erred by dismissing Hallberg's claims against the Board of Regents.

2.  Whether the circuit court erred by dismissing the claims against Leinwall and Reed.

## Analysis and Decision

[¶10.]      We review the circuit court's decision granting a motion to dismiss de novo with no deference to the circuit court's determination. *N. Am. Truck & Trailer, Inc. v. M.C.I. Commc'n. Servs.*, 2008 S.D. 45, ¶ 6, 751 N.W.2d 710, 712. "A motion to dismiss under SDCL 15-6-12(b) tests the legal sufficiency of the pleading, not the facts which support it." *Id.* For purposes of this appeal, we "treat as true all facts properly pled in the complaint and resolve all doubts in favor of the pleader." *Id.*

### 1. Whether the circuit court erred by dismissing Hallberg's claims against the Board of Regents.

[¶11.]      Determining whether the circuit court erred requires that we address the extent to which the Legislature has waived sovereign immunity against the Board. When sued in their official capacities, the provisions of Article III, § 27 of the South Dakota Constitution and the common law provide that the State, its entities, and its employees are immune from suit. *See Pennington Cty. v. State ex rel. Unified Judicial Sys.*, 2002 S.D. 31, ¶ 14, 641 N.W.2d 127, 131; *Sisney v. Reisch*, 2008 S.D. 72, ¶ 12, 754 N.W.2d 813, 818 ("[S]uits against officers . . . in their official capacity[] are in reality suits against the State itself."). The Board of Regents, as a State entity, is protected by sovereign immunity. *See Kringen v. Shea*, 333 N.W.2d 445, 446 (S.D. 1983). Yet, sovereign immunity is not necessarily an impenetrable shield. It, like many other defenses, may be waived. *Truman v. Griese*, 2009 S.D. 8, ¶ 9, 762 N.W.2d 75, 78; *see also* S.D. Const. art. III, § 27.

[¶12.]      We look to the basic maxims of the doctrine of sovereign immunity to guide us in determining whether and to what extent the State has waived its

immunity by passing SDCL 3-16-9. Because the existence of immunity is a legal question, we make this inquiry under the de novo standard of review. *Hansen v. S.D. Dep't of Transp.*, 1998 S.D. 109, ¶ 7, 584 N.W.2d 881, 883. "The [S]tate may . . . waive sovereign immunity by legislative enactment identifying the conditions under which lawsuits of a specified type would be permitted." *Wilson v. Hogan*, 473 N.W.2d 492, 494 (S.D. 1991). In these instances, the State waives its immunity only to the extent the plaintiff follows the established procedure. *See CitiBank, N.A. v. S.D. Dep't of Revenue*, 2015 S.D. 67, ¶ 36, 868 N.W.2d 381, 397.

[¶13.] SDCL 3-16-9 provides:

> No department, bureau, board, or commission of the [S]tate or any of its political subdivisions may dismiss, suspend from employment, demote, decrease the compensation of, or take any other retaliatory action against an employee because the employee reports in good faith to an appropriate authority a violation or suspected violation of a law or rule, an abuse of funds or abuse of authority, or substantial and specific danger to public health or safety, unless the report is specifically prohibited by law . . . . *A [S]tate employee who is the subject of retaliation under this section may file a grievance with the Civil Service Commission pursuant to § 3-6D-22.* For purposes of an employee of a political subdivision, an appropriate authority includes any human resources department of that political subdivision, if any, any state's attorney, or the attorney general.

(Emphasis added.) The purpose of SDCL 3-16-9 is to protect state employees from retaliatory employment actions when they report suspected conduct that violates state laws, breaks rules, or affects public safety. SDCL 3-6D-22, a related statute, details the process a grievant must follow to file a complaint with the Commission. At the time Hallberg filed her complaint, the statute provided:

> An employee *may file a grievance with the Civil Service Commission* if the employee believes that there has been retaliation because of reporting a violation of [S]tate law

through the chain of command of the employee's department, to the attorney general's office, the State Government Accountability Board, or because the employee has filed a suggestion pursuant to this section.[1]

(Emphasis added.)

[¶14.]    Review of the plain language of SDCL 3-16-9 and SDCL 3-6D-22 reveals that neither statute expressly authorizes Hallberg to initiate her action in circuit court. It is well established that absent "*specific* constitutional or statutory authority, an action cannot be maintained against the State." *Pourier v. S.D. Dep't of Revenue*, 2010 S.D. 10, ¶ 14, 778 N.W.2d 602, 606 (emphasis added).

[¶15.]    Nevertheless, Hallberg argues she is entitled to file a direct cause of action because SDCL 3-16-9 provides that a "state employee . . . *may* file a grievance with the Civil Service Commission . . . ." (Emphasis added.) That language, she claims, must be considered against SDCL 3-6D-4, a related statute within SDCL Title 3 that addresses who may go before the Commission.[2] It is Hallberg's position

---

1.    SDCL 3-6D-22 was revised during the 2019 Legislative session to read:

> A civil service employee may file a grievance with the commission if the employee believes that there has been retaliation because of reporting a violation of state law through the chain of command of the employee's agency, to the attorney general's office, the State Government Accountability Board, or because the employee has filed a suggestion pursuant to this section.

2.    SDCL 3-6D-4(5) provides that chapter 3-6D procedures do not apply to the following employees:

> Presidents, deans, administrative and policy-making positions, student health service physicians, teaching and professional research positions under the jurisdiction of the State Board of Regents and other directors or administrative policy-making

(continued . . .)

that the word *may* in SDCL 3-16-9 should be understood to distinguish between those who *may* file a grievance within chapter 3-6D and those who *may not* because SDCL 3-6D-4 excludes them. Thus, in her view, those excluded from filing their claims with the Commission under SDCL 3-6D-4 are entitled to file suit under SDCL 3-16-9 in circuit court. In presenting this argument, Hallberg does not take a definitive stance regarding whether she believes her job was exempted by the provisions of SDCL 3-6D-4.

[¶16.]    In *Montgomery v. Big Thunder Gold Mine, Inc.*, we were asked to determine the meaning of the word "may" in SDCL 20-13-29. 531 N.W.2d 577, 579 (S.D. 1995). That statute provided that those aggrieved by discrimination or unfair practices "may file [a claim] with the division of human rights . . . ." *Id.* We disagreed that the word "may" meant that "a person may file either with the Division or in circuit court." *Id.* Rather, we held that the word "may" means that "a discrimination victim is not required to file a charge at all." *Id.* Likewise, in the instant case, the word "may" in SDCL 3-16-9 does not mean a grievant may file with the Commission or the circuit court. Rather, "may" means a qualified grievant "may" file a grievance with the Commission, or he or she can elect not to.

[¶17.]    Our conclusion is reinforced by the language of the next statute in the chapter—SDCL 3-16-10. This similar, but unrelated statute involving retaliation

_____

(. . . continued)

        positions of such institutions as determined by the human
        resources commissioner[.]

We note that Hallberg has not claimed that she is an excluded employee. Rather, she claims that it is "unclear" whether she falls within the exclusion set out in SDCL 3-6D-4(5).

for reporting the misuse of public funds was enacted the same year as SDCL 3-16-9 and provides in part, "[i]f no grievance process exists, a civil action may be filed in circuit court." Because SDCL 3-16-9 contains no similar language, we will not read the words into the statute.

[¶18.]     Hallberg chose not to file her claim with the Commission. Therefore, under the current statutory framework, the fate of her claim against the State remains unchanged regardless of whether SDCL 3-6D-4 exempts her from appearing before the Commission. This is because if, as Hallberg cautiously hypothesizes, her position falls within the exemptions listed in SDCL 3-6D-4, then she is not entitled to go before the Commission at all and SDCL 3-16-9 affords her no relief. If, on the other hand, Hallberg is not exempted and is thus permitted to file with the Commission, she failed to do so, which is fatal to her case.

[¶19.]     Should the Legislature wish to expand its waiver to allow whistleblowers to sue a state entity beyond filing a grievance with the Commission, it need only insert language indicating that filing in circuit court is appropriate. *See, e.g.*, SDCL 3-16-10; *see also Cromwell v. Rapid City Police Dep't*, 2001 S.D. 100, ¶ 15, 632 N.W.2d 20, 24–25 (holding that the Legislature waived sovereign immunity to the extent that the public entity participates in a risk sharing pool or purchases insurance). Because no such language is found within SDCL 3-16-9, it provides only a limited waiver of sovereign immunity to the extent that a grievance

may be filed with the Commission. It is therefore unnecessary to address the exhaustion of remedies doctrine.[3]

[¶20.] Alternatively, Hallberg argues that she should be allowed to proceed in circuit court under our Constitution's mandate that every injured plaintiff "shall have a remedy by due course of law[.]" S.D. Const. art VI, § 20. Hallberg's reliance on the open courts doctrine is similarly unavailing because it cannot be used as "a sword to create a cause of action" where none exits. *Wegleitner v. Sattler*, 1998 S.D. 88, ¶ 33, 582 N.W.2d 688, 698. As we noted in *Green v. Siegel, Barnett & Schutz*, "the remedy constitutionally guaranteed for an injury done is qualified by the words 'by due course of law.'" 1996 S.D. 146, ¶ 26, 557 N.W.2d 396, 403. "This means that the remedy constitutionally guaranteed must be one that is legally cognizable. The [L]egislature has the power to define the circumstances under which a remedy is legally cognizable and those under which it is not." *Id.*

---

3. The recent United States Supreme Court decision, *Fort Bend County v. Davis*, supports our holding that filing with the Commission was a jurisdictional prerequisite of SDCL 3-16-9. ___ U.S. ___, ___, 139 S. Ct. 1843, 204 L. Ed. 2d 116 (2019). In that case, the United States Supreme Court held that "the word 'jurisdictional' is generally reserved for prescriptions delineating the classes of cases a court may entertain (subject-matter jurisdiction) and the persons over whom the court may exercise adjudicatory authority (personal jurisdiction)." *Id.* at 1848. Objections to jurisdiction may be raised at any time and lack of jurisdiction requires dismissal. *Id.* at 1849. In contrast, "nonjurisdictional claim-processing rules" promote orderly litigation by requiring defined procedural steps. *Id.* Failure to follow these steps may result in dismissal if properly raised, but can be waived if a party fails to object. *Id.* Here, the provisions of SDCL 3-16-9 are jurisdictional because the Legislature vested the Commission with the authority to hear these types of claims. *See also Citibank*, 2015 S.D. 67, ¶ 37, 868 N.W.2d at 397 (holding that certain procedural requirements, such as a statute of limitations, may be made jurisdictional depending on the intention of the Legislature).

[¶21.]     There is little question that the Legislature intended to create a remedy for whistleblowers, but that remedy is confined to the grievance procedure before the Commission.  SDCL 3-16-9 says as much when it provides that: "[a] [S]tate employee who is the subject of retaliation under this section *may file a grievance with the Civil Service Commission* pursuant to § 3-6D-22."  (Emphasis added.)  The circuit court did not err by dismissing Hallberg's complaint against the Board of Regents.

### 2.  Whether the circuit court erred by dismissing Hallberg's claims against Leinwall and Reed.

[¶22.]     The circuit court dismissed Hallberg's complaint against Leinwall and Reed because it found their actions were discretionary and protected by the doctrine of sovereign immunity.  Hallberg asserts the dismissal was erroneous because she sued them in their individual capacity for tortious conduct.  The Board responds that even if Leinwall and Reed were sued individually, the decision to terminate Hallberg's employment was carried out as a discretionary act protected by sovereign immunity.  Additionally, the Board contends that Hallberg's complaint fails to set forth facts supporting a claim of an intentional tort.  Hallberg replies that her complaint was pled to the appropriate level of particularity required for notice pleading.

[¶23.]     Actions "against officers of the [S]tate in their official capacity[] are in reality suits against the State itself."  *Reisch*, 2008 S.D. 72, ¶ 12, 754 N.W.2d at 818.  Likewise, "state employees who are sued in an individual capacity are entitled to immunity dependent upon the function performed by the employee.  State employees are generally immune from suit when they perform discretionary

functions, but not when they perform ministerial functions." *Id.* ¶ 12, 754 N.W.2d at 818–19.

[¶24.] Hallberg concedes that under ordinary circumstances, the decision to terminate an employee is a discretionary act that shields state employees from liability even if they are sued in their individual capacities. However, she also correctly notes that state employees are not safeguarded from liability if they commit intentional torts or ultra vires acts that exceed the scope of their authority. *Bego v. Gordon*, 407 N.W.2d 801, 808 (S.D. 1987). By firing her out of retaliation, Hallberg argues Leinwall and Reed exceeded the scope of their official capacities and lost their right to be shielded by the sovereign. *Id.*

[¶25.] We have previously acknowledged "a cause of action for wrongful discharge [that] arises on behalf of an employee where an employer's motivation for termination contravenes a clear mandate of public policy." *Niesent v. Homestake Mining Co. of Cal.*, 505 N.W.2d 781, 783 (S.D. 1993). *Tiede v. CorTrust Bank, N.A.*, 2008 S.D. 31, ¶ 10, 748 N.W.2d 748, 751. "Retaliatory discharge is a tort arising from a breach of public policy duties independent of the employment contract." *Tiede*, 2008 S.D. 31, ¶ 15, 748 N.W.2d at 752. The public policy to be protected must be "substantial." *Id.* An employee who alleges a wrongful discharge claim is provided a remedy in tort not just to compensate for loss of employment, but also to preserve the underlying fundamental public policy itself.

[¶26.] Determining what is a clearly mandated public policy can be challenging. In fact, it "has been called the Achilles heel of the principle underlying the tort of retaliatory discharge." *Hicks v. Resolution Trust Corp.*, 736 F. Supp. 812,

815 (N.D. Ill. 1990) (vacated on other grounds). Yet, we addressed this question years prior to the enactment of SDCL 3-16-9, in *Dahl v. Combined Insurance Company*, where we recognized the tort of retaliatory discharge in the context of whistleblowers. 2001 S.D. 12, ¶¶ 13–14, 621 N.W.2d 163, 167–68.[4] Instrumental to our holding in *Dahl* was our belief that a "whistleblowing activity *which serves a public purpose should be protected.*" *Id.* ¶ 12, 621 N.W.2d at 167 (emphasis in original). It has, therefore, been the longstanding policy of our State to protect employees in the private sector who report illegal or improper conduct from retaliatory discharge. This reasoning stands the test of time, for it remains true that "[t]he law is feeble indeed if it permits an employer to take matters into its own hands by retaliating against its employees who cooperate in enforcing the law." *Id.* ¶ 14, 621 N.W.2d at 168.

[¶27.]     We see no meaningful difference between private sector and public sector employees for purposes of the intentional tort of retaliatory discharge. Although the existence of sovereign immunity would ordinarily draw a distinction between public and private employees, sovereign immunity is inapplicable to intentional torts committed by State employees. *Hart v. Miller*, 2000 S.D. 53, ¶ 38,

---

4.     We did not break new ground with *Dahl*. Many jurisdictions came before us in recognizing the common-law tort of retaliatory discharge for protected whistleblowing activity. *See, e.g.*, *Frobose v. Am. Sav. & Loan Ass'n of Danville*, 152 F.3d 602, 609 (7th Cir. 1998) (assessing a state law retaliatory discharge claim); *Moyer v. Allen Freight Lines, Inc.*, 885 P.2d 391, 393–94 (Kan. Ct. App. 1994) (holding whistleblowing is an exception to the at-will employment doctrine); *McArn v. Allied Bruce–Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993) (holding that employees "who refuse[ ] to participate in an illegal act . . . shall not be barred by the common law rule of an employment at will from beginning an action in tort . . . .").

609 N.W.2d 138, 148. Accordingly, the public policy considerations we first articulated in *Dahl* apply to this case. With this precedent in mind, we review the circuit court's decision to dismiss Hallberg's claims against Leinwall and Reed on the grounds that Hallberg's discharge was a discretionary act protected by sovereign immunity. *See Gruhlke v. Sioux Empire Fed. Credit Union, Inc.*, 2008 S.D. 89, ¶ 17, 756 N.W.2d 399, 408.

[¶28.]    Pleadings may be considered to determine whether a plaintiff is alleging a state employee has committed "wrongful acts in excess of the employee's official authority." *Bego*, 407 N.W.2d at 809. Under notice pleading principles, we require "a short and plain statement of the claim showing that the pleader is entitled to relief." *St. Pierre v. State ex rel. S.D. Real Estate Comm'n*, 2012 S.D. 25, ¶ 17, 813 N.W.2d 151, 157. This standard requires that Hallberg plead "more than labels and conclusions." *Sisney v. Best*, 2008 S.D. 70, ¶ 7, 754 N.W.2d 804, 808. A complaint must put "a person of common understanding" on notice, "with reasonable certainty of the accusations against [them] so [they] may prepare [their] defense." *Id.* ¶ 18, 813 N.W.2d at 157. While detailed factual allegations are not necessary, Hallberg must set forth "a statement of circumstances, occurrences, and events in support of [her] claim" that Leinwall and Reed committed acts outside the scope of their employment. *Gruhlke*, 2008 S.D. 89, ¶ 17, 756 N.W.2d at 409. But even if a complaint sets forth a detailed set of facts, a failure to plead each element of a claim is fatal. *Id.* ¶ 21, 756 N.W.2d at 410.

[¶29.]    In her complaint against Leinwall, Hallberg avers that: (1) she reported the counseling center's allegedly unlawful practices; (2) she received a

termination letter from Leinwall shortly after she made her report; and (3) her termination for reporting the practices was unlawful because it violated public policy. To support her belief that the Center was engaged in unlawful activity, Hallberg alleged that unlicensed individuals were signing therapy notes, engaging in counseling without a license, and accessing confidential records.

[¶30.]     These allegations, when taken as true, raise more than a "formulaic recitation of the elements of a cause of action . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). Therefore, the circuit court erred in dismissing Hallberg's claim of retaliatory discharge against Leinwall under SDCL 15-6-12(b)(5). On remand, we note that questions concerning whether Leinwall exceeded the scope of her authority by committing an illegal act or the intentional tort of retaliatory discharge implicate mixed questions of law and fact. *Bego*, 407 N.W.2d at 812. We, therefore, "encourage the development of a full record prior to their determination." *Id.*

[¶31.]     We turn next to Hallberg's allegations against Reed. To establish her claim of retaliatory discharge against Reed, Hallberg asserts that he served as Leinwall's direct supervisor. Aside from this, however, Hallberg has not pled specific allegations regarding how Reed retaliated against her. For instance, the complaint does not allege that Reed ordered Leinwall to send the letter terminating Hallberg. Nor does it allege that Reed had personal knowledge of her attempts to report the allegedly unethical or unlawful conduct.

[¶32.]     Pleading that Reed served as Leinwall's supervisor, without more, does not include the "circumstances, occurrences, and events in support of the claim

presented" and is, therefore, insufficient under our notice pleading standard to establish the threshold for an intentional tort. *See Gruhlke*, 2008 S.D. 89, ¶ 17, 756 N.W.2d at 409. Because Hallberg did not aver that Reed was acting outside the scope of his authority, the circuit court did not err by concluding that Reed was acting in a discretionary capacity and shielded by the doctrine of sovereign immunity.

## Conclusion

[¶33.] The circuit court did not err by dismissing Hallberg's claims against the Board. The Legislature waived the Board's sovereign immunity for whistleblower claims only to the extent that it allowed employees to file claims with the Commission. Additionally, Hallberg adequately pled the tort of retaliatory discharge against Leinwall, but failed to adequately plead a cognizable tort against Reed. We affirm the circuit court's dismissal of Reed and reverse and remand Hallberg's claim against Leinwall for further proceedings consistent with this opinion. We affirm in part and reverse in part.

[¶34.] GILBERTSON, Chief Justice, and JENSEN and SALTER, Justices, and WILBUR, Retired Justice, concur.